**CROWN ZELLERBACH CORPORA-
TION, Plaintiff,**

v.

**W. Willard WIRTZ and Edward C.
Sylvester, Defendants.**

**UNITED PAPERMAKERS AND PAPER-
WORKERS, AFL–CIO, Plaintiff,**

v.

**CROWN ZELLERBACH CORPORA-
TION, W. Willard Wirtz and Edward
C. Sylvester, Defendants.**

**Civ. A. Nos. 3150–67, 3151–67.**

United States District Court
District of Columbia.

Jan. 2, 1968.

Wilmer, Cutler & Pickering, Louis F. Oberdorfer, John W. Vardaman, Washington, D. C., for Crown Zellerbach.

David L. Rose, Benjamin W. Mintz, Attys., Dept. of Justice, Washington, D. C., for W. Willard Wirtz and Edward C. Sylvester.

McInnis, Wilson, Munson & Woods, Warren Woods, Washington, D. C., for United Papermakers and Paperworkers, AFL-CIO.

SIRICA, District Judge.

These actions, having been consolidated for hearing, came on to be heard on plaintiffs' Motions for Preliminary Injunction, and upon the affidavits, exhibits and legal memoranda in support thereof and in opposition thereto, and was, on December 22, 1967, argued by counsel. The Court, having considered the aforesaid motions, affidavits, exhibits, memoranda and argument, hereby makes the following findings and conclusions:

### FINDINGS OF FACT

1. Plaintiff Crown Zellerbach Corporation ("Crown") is a corporation organized under the laws of Nevada; its principal place of business is at San Francisco, California. Crown is engaged

in the manufacture of paper and lumber products. In 1966 Crown had consolidated sales of approximately $765,000,-000. It sells such products to, among others, the United States and its agencies and customers which in turn sell to and contract with the United States and its agencies. In 1966 Crown's consolidated direct sales to the United States Government totaled approximately $7,-200,000. A division of Crown operates a Papermill ("the Mill") in Bogalusa, Louisiana. A majority of the employees in the Mill are represented by local affiliates of the United Papermakers and Paperworkers ("the Papermakers").

2. Plaintiff United Papermakers and Paperworkers, AFL-CIO, is an unincorporated labor organization with its headquarters and principal place of business at Albany, New York. Papermakers and its affiliated local unions 189 and 189A act as the exclusive collective bargaining representatives for hourly paid production and maintenance employees at the Mill.

3. Defendant W. Willard Wirtz is an individual residing at 5009—39th Street, N.W., Washington, D. C. He is found within and is a citizen of the District of Columbia, and he is the Secretary of Labor. Pursuant to Section 201 of Executive Order 11246 ("the Executive Order") the Secretary of Labor is responsible for the administration of the equal employment opportunity clauses in Government contracts and subcontracts.

4. Defendant Edward C. Sylvester is an individual residing at 769 Delaware Avenue, S.W., Washington, D. C. He is found within and is a citizen of the District of Columbia, and he is Director, Office of Federal Contract Compliance ("the OFCC"). The Secretary of Labor has delegated his authority and responsibility under the Executive Order to Sylvester.

5. By Agreements dated March 19 and June 16, 1967 ("the OFCC Agreements"), Crown and OFCC agreed upon action to be taken by Crown to place itself in compliance with the Executive Order. With the exception of changes related to the seniority system in the Mill, it is not disputed that Crown has taken all the actions required of it by the Agreements. The Papermakers are not a party to the OFCC Agreements and at no time during their negotiation were the Papermakers permitted by defendants to participate.

6. The sole issue remaining between Crown and OFCC is whether Crown is obligated under the Executive Order and the OFCC Agreements to change or is obligated only to seek to bargain to change the seniority system presently in effect in the Mill. Also put in issue by the Papermakers is the question whether defendants have authority under the Executive Order to direct the incorporation in a collective bargaining agreement of a specific seniority system mandated by them.

7. OFCC has demanded that Crown adopt in place of the current job seniority system a combination seniority system as defined in Paragraph B.2. of the June 16 OFCC Agreement, or a system which produces equivalent results, and that Crown change certain seniority practices regarding "recall."

8. Beginning about July 10, 1967, Crown began negotiations with the Papermakers for a new collective bargaining agreement. Throughout those negotiations Crown made continuous efforts to secure the agreement of the Papermakers and their local affiliates at Bogalusa to the combination seniority system described in Paragraph B.2. of the June 16 OFCC Agreement.

9. Crown has sought to bargain in good faith to persuade the Papermakers and its local affiliates to agree to change the seniority system provided in the collective bargaining agreement. The Papermakers have insisted in the negotiations that, on the advice of its counsel, the changes proposed by OFCC may not be lawfully imposed by Crown upon the Papermakers. On September 8, 1967, the Papermakers formally notified Crown that unless a collective bargaining agree-

ment was signed by September 19, presumably without effecting the seniority system changes demanded by OFCC, the union would strike at Bogalusa. Thereafter, Crown requested the services of a federal mediator. With his assistance, the parties reached agreement on all issues except seniority. With respect to seniority, it was agreed that they would continue to negotiate for a reasonable time with the understanding that after such additional negotiation, Crown, upon 15 days notice, could unilaterally install changes in the seniority system. Within ten days after receipt of notice that Crown intended such changes, the union could strike. Such negotiations were resumed about November 8, 1967, and produced a tentative agreement of December 2, 1967, for a procedure which Crown and the union considered as capable, after further negotiation and the best efforts of the Department of Labor, of meeting the demands of OFCC. The December 2 agreement was signed by representatives of Local 189, Local 189A and the Papermakers' International. By letter dated December 7, 1967, the President of Local 189A advised Crown and the Papermakers' International that Local 189A neither accepted nor rejected the principles contained in the December 2 agreement "until further negotiations were had".

10. On the same date that this action was filed, the Papermakers filed suit against defendants and against Crown alleging, among other things, that unilateral implementation of a new seniority system would violate Crown's obligations under the existing collective bargaining agreement and under the National Labor Relations Act. If Crown makes such changes unilaterally, it is most likely that a strike will occur.

11. The December 2 proposal was submitted to Sylvester on December 6, 1967. At that time he indicated that the December 2 agreement would probably not be satisfactory and he expressed again his intention as first stated on October 26, 1967, and thereafter reiterated in letters of November 2 and 24, 1967, to invoke sanctions against Crown if it did not abolish its present seniority system by December 8, 1967, and make the changes demanded by OFCC. Specifically, Sylvester refused to give assurance either to Crown or to the Court that he would not, without affording Crown a prior hearing as required by Section 208(b) of the Executive Order, circulate a "consult memorandum" to the heads of all agencies requiring that contracting officers consult with OFCC before awarding contracts to Crown. At the hearing on Plaintiff's Motions for Preliminary Injunction, counsel for defendants in response to an inquiry from the Court stated that if defendants finally rejected the December 2 proposal, defendants would be likely to issue a notice of opportunity of hearing in connection with a proposed debarment of Crown and temporarily to suspend Crown from Government business pending an administrative hearing.

12. A "consult memorandum" to the heads of all agencies was circulated by Sylvester on May 5, 1967, and was withdrawn on June 16, 1967. That memorandum was interpreted by some Government contracting officers to mean that Crown was not in compliance with the Executive Order and that no further Government contracts could be issued to Crown except after consultation with OFCC or until OFCC advised otherwise. There is evidence tending to show that Crown and its affiliates lost at least one prospective sales contract and had other contract awards delayed as a result of the circulation of the May 5 memorandum.

13. If another such memorandum or any other notice which states that Crown is not in compliance is circulated by OFCC, or if Crown is summarily debarred pending a hearing, it is likely that Crown will irreparably lose a substantial volume of sales, not subject to exact determination, to both the Government and to other contractors who in turn do business with the Government. If Crown loses a substantial volume of sales, there will be an increasing loss

340

in jobs and in membership in the Papermakers Local Union at Bogalusa which will deprive the International Union of its dues. Further, if a strike should occur as a result of the imposition of a seniority system unacceptable to the bargaining parties, Crown will suffer total loss of production at its Bogalusa Mill and the Papermakers will be subject to loss of substantial money which it is obligated to pay in benefits.

14. Crown has not been afforded an opportunity for an administrative hearing pursuant to Section 208(b) of the Executive Order.

15. The issue of whether the seniority system presently in operation in the Mill is discriminatory and unlawful under Title VII of the Civil Rights Act of 1964 and whether a revised seniority system giving credit for plant wide seniority would be legal and equitable in the circumstances is pending in two cases in the United States District Court for the Eastern District of Louisiana styled Hill et al. v Crown Zellerbach et al. and Mondy et al. v. Crown Zellerbach et al., 271 F.Supp. 258. The local affiliates of the Papermakers are defendants in those actions. The Equal Employment Opportunity Commission has intervened in those cases on other issues.

16. The defendants have not made any showing of a public interest that requires summary suspension of Crown's business with the Government and Government contractors at the present time or during any administrative hearing.

17. Neither of the defendants, and none of their agents or employees, have made efforts to persuade the leadership or the members of the Bogalusa local affiliates of the Papermakers to accept the combination seniority proposal described in Paragraph B.2. of the June 16 OFCC Agreement.

18. In the event an administrative hearing is held in accordance with Section 208(b) of the Executive Order, the defendants have agreed that the Papermakers will be entitled to participate therein.

CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this action.

2. Section 208(b) of the Executive Order requires that Crown be given an opportunity for a hearing before being debarred, directly or indirectly, from Government contracts. Circulation without notice or hearing of a "Heads of All Agencies" memorandum or summary debarment, pending a hearing, violates Section 208(b) of the Order.

3. The Court cannot conclude on the record now before it, that the defendants are constitutionally authorized to debar Crown, formally or informally, prior to completion of an administrative hearing.

4. Crown cannot comply with both Sylvester's demands that it install combination seniority unilaterally and the Papermakers' demand that any change in the seniority system be made by collective bargaining and their claim that any change made unilaterally would violate the agreement to bargain for a reasonable time about changes in the seniority system and the National Labor Relations Act.

5. If Crown accedes to the demands of the Papermakers, defendants, unless restrained, would inflict irreparable injury upon it by causing suspension of Crown's sales to the Government and Crown's customers that themselves do business with the Government, without a prior hearing. If Crown accedes to the demands of the defendants, it will probably suffer a strike in the Mill and be subject to charges by Papermakers of unfair labor practices in violation of the National Labor Relations Act. Either course of action will inflict upon Crown and the Papermakers irreparable injury, the value of which is not susceptible of measurement and for which neither would have an adequate remedy.

6. The public interest will be best served by preservation of the *status quo* pending the outcome of an administrative hearing or a trial of this action.

■ 7. Crown Zellerbach and Papermakers are entitled, as a matter of law, to a preliminary injunction enjoining defendants from directly or indirectly debarring Crown from further business with the Government or Government contractors by means of formal debarment, temporary suspension, or otherwise, and from interfering with Crown's collective bargaining agreement with Papermakers, issuance of a consult memorandum, or any other similar device, prior to an administrative hearing in which the question of whether Crown is in compliance with Executive Order No. 11246 can be resolved.

■ 8. Plaintiffs have an adequate administrative remedy under the procedures contemplated by Executive Order 11246 and the contracts entered into by Crown, and the implementing regulations. Accordingly, plaintiffs are not entitled to an injunction restraining defendants from instituting administrative proceedings to debar Crown from eligibility for Government contracts.

## PRELIMINARY INJUNCTION

The actions came on to be heard on plaintiffs' Motion for Preliminary Injunction, and upon the affidavits, exhibits and legal memoranda in support thereof and in opposition thereto, and was, on December 22, 1967, argued by counsel. The Court, having considered the aforesaid motions, affidavits, exhibits, memoranda and argument, announced from the bench its decision to enter a preliminary injunction and, on that day, modified the temporary restraining order theretofore entered and continued it as so modified to and including January 2, 1968. The Court having this 2nd day of January, 1968, made findings of fact and conclusions of law, it is this 2nd day of January, 1968,

Ordered: that defendants W. Willard Wirtz, Edward C. Sylvester, and their subordinates, agents and employees, and others acting in concert with them, be and hereby are restrained from taking any action without first affording Crown and Papermakers notice and a full evidentiary hearing on the issue whether plaintiff Crown Zellerbach Corporation is in compliance with the equal employment opportunity clauses required in its Government contracts and subcontracts by Executive Order No. 11246, as implemented by agreements dated March 19 and June 16, 1967, between Crown Zellerbach Corporation and the Office of Federal Contract Compliance, to:

(a) advise the heads of any agencies of the United States that Crown is not in compliance with the OFCC Agreements or with the Executive Order by issuing or circulating any memorandum, notice of hearing or other communication to any head of agency or contracting officer or any other persons than those who require notice in order to participate in the hearing;

(b) cancel, cause to be cancelled, or recommend cancellation of, any of Crown's existing contracts with the United States or its agencies, or with others who contract with, sell to or otherwise deal with the United States or any of its agencies;

(c) debar, threaten to debar, or otherwise blacklist or threaten to blacklist, Crown from eligibility for contracts with the United States and its agencies or with others who contract with, sell to or otherwise deal with the United States and its agencies;

(d) interfere in any other way with Crown's business relationships with the United States and its agencies or with others who contract with, sell to or otherwise deal with the United States and its agencies;

Provided: that this injunction shall not restrain the defendants from instituting a hearing under Section 208(b) of the Executive Order so long as any notice thereof states that Crown Zellerbach Corporation is not deemed to be in noncompliance with the Executive Order, unless and until an order shall be entered in accordance with 41 CFR part 60–1 after

**342**

notice and a hearing conducted pursuant thereto; and it is further

Ordered: that this Preliminary Injunction be and remain in full force and effect until final hearing of the case and until further order of this Court.

ORDER

Upon motion of United Papermakers and Paperworkers, AFL-CIO, plaintiff in Civil Action 3151–67, to intervene in Civil Action 3150–67, Crown Zellerbach Corporation v. Wirtz and Sylvester, and it appearing to the Court that common questions of law and fact exist in the two cases, and there being no opposition by Crown Zellerbach Corporation and defendants to the motion to intervene, it is this 4th day of January, 1968

Ordered that the motion to intervene be and is hereby granted.