**UNITED STATES of America by Ramsey CLARK, Attorney General**

v.

**LOCAL 189, UNITED PAPERMAKERS AND PAPERWORKERS, AFL–CIO, CLC; United Papermakers and Paperworkers, AFL–CIO, CLC; and Crown Zellerbach Corporation.**

**Civ. A. No. 68–205.**

United States District Court
E. D. Louisiana,
New Orleans Division.

March 26, 1968.

---

Louis C. LaCour, U. S. Atty., New Orleans, La., David L. Rose, Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., for United States.

Richard B. Sobol, New Orleans, La., for plaintiff-intervenors.

Warren Woods, McInnis, Wilson, Munson & Woods, Washington, D. C., C. Paul Barker, Dodd, Hirsch, Barker & Meunier, New Orleans, La., for defendant unions.

Louis F. Oberdorfer, John Vardaman, Jr., Wilmer, Cutler & Pickering, Washington, D. C., Michael J. Molony, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Crown Zellerbach Corp.

## ORDER

HEEBE, District Judge.

This cause having come on for hearing on the motion of the United States for a preliminary injunction against the defendants, as well as a trial on the merits of the complaints of the United States and the plaintiff-intervenors, Anthony Hill, David Johnson, Sr., and Local 189a, United Papermakers and Paperworkers, for permanent injunctive relief;

IT IS NOW THE ORDER OF THE COURT that, for the reasons assigned, the relief sought be, and the same is hereby, GRANTED to the following extent:

(a) The defendants Crown Zellerbach Corporation and Local 189, United Papermakers and Paperworkers, AFL–CIO, CLC, and United Papermakers and Paperworkers, AFL–CIO, CLC, their officers, agents, employees, servants and all persons and organizations in active concert or participation with them, are hereby ENJOINED and RESTRAINED, pending the further orders of this Court, from discriminating against the Negro employees of the defendant Crown Zellerbach Corporation's paper mill at Bogalusa, Louisiana, in violation of Title VII of the Civil Rights Act of 1964, and in particular, the defendants are hereby ORDERED to ABOLISH forthwith the system of "job seniority" and any other seniority system designed to discriminate against the Negro employees at said plant or having the effect of so discriminating, insofar as such systems may apply to the promotion, demotion, or selection for training of Negro employees hired prior to January 16, 1966 in competition with employees of the opposite race; and the said defendants are ORDERED to ESTABLISH, with respect to such promotions, demotions and selection for training, and in the place of such "job seniority" or similar systems, a system of "mill seniority" as follows:

(1) Total mill seniority (i. e., the length of continuous service in the mill) alone shall determine who the "senior" bidder or employee is for purposes of permanent or thirty-day promotions, or for purposes of demotion, in all circumstances in which one or more of the competing employees is a Negro employee hired prior to January 16, 1966;

(2) For jobs which operate only one shift per day, promotions to fill casual or vacation vacancies will be made on the same basis as permanent and thirty-day promotions;

(3) For jobs which operate more than one shift per day, promotions because of casual or vacation vacancies will be awarded to the senior (as determined in (1) above) qualified man on the shift and/or machine where the vacancy exists;

(4) Promotions and demotions above shall not affect persons who have formal written waivers in effect at that time. Persons promoted shall go around a waived position in any job slot, and persons demoted shall likewise go around such a position on the way down;

(5) Qualified employees shall be selected for training on the same basis as for promotion described above.

The provisions of this decree pertaining to the implementation by the defendants of a system of "mill seniority" shall be placed into effect within ten days from the entry of this order; prior to the implementaton of the said

"mill seniority" system, the defendants are ENJOINED and RESTRAINED from interfering and failing to comply with the agreement of March 19, 1967, as modified by the agreements of June 16, 1967 and January 3, 1968, between the defendant Crown Zellerbach Corporation and the Office of Federal Contract Compliance of the United States Department of Labor.

(b) The defendant Local 189, United Papermakers and Paperworkers, AFL–CIO, CLC, and United Papermakers and Paperworkers, AFL–CIO, CLC, their officers, agents, members, employees, servants, and all persons and organizations in active concert or participation with them, are ENJOINED and RESTRAINED, pending the further orders of this Court, from interfering with or hindering, by striking, threatening to strike, or otherwise, the compliance by the defendants with the foregoing provisions of this order.

## REASONS

This action was filed by the Attorney General on behalf of and in the name of the United States on January 30, 1968, against Local 189 of the United Papermakers and Paperworkers AFL–CIO, CLC (all the members of which are of the white race), its parent union, the United Papermakers and Paperworkers, AFL–CIO, CLC, and Crown Zellerbach Corporation, seeking relief for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and from interference with the implementation of Executive Order 11246, 30 F.R. 12319 (September 28, 1965), forbidding racial discrimination in employment opportunities by government contractors. On February 15, 1968, Local 189a, United Papermakers and Paperworkers, AFL–CIO, CLC, (all the members of which are Negroes), David Johnson, Sr., and Anthony Hill, both of whom are Negro employees of Crown Zellerbach and members of Local 189a, filed a motion for leave to intervene as parties plaintiff herein and as class representatives. By orders of February 21, 1968 and March 8, 1968, this Court granted such leave and a complaint in intervention was filed. On March 20, 1968, this cause came on for hearing on plaintiff's motions for preliminary injunctions against defendant unions and against defendant Crown, and on the prayers for permanent injunctions by plaintiff and plaintiff-intervenors. By stipulation of the parties pursuant to Rule 42(b), the hearing was limited to the following issues:

"(a) Whether, under the facts and circumstances of this case, the job seniority system which was in effect at the Bogalusa paper mill prior to February 1, 1968, was unlawful?

"(b) If the answer to the above question is in the affirmative, what is the necessary or appropriate standard or guideline for identifying the seniority of employees for purposes of promotion and demotion?"

All other issues in this case were not submitted to the Court but were expressly reserved for the hearing which all parties agree will commence on April 30, 1968.

We find, as a matter of fact, (1) that Crown and the white local actively engaged, prior to January 1966, in a pervasive pattern of discrimination against the Negro employees at Crown's Bogalusa paper mill with respect to employment opportunities of promotion, demotion and selection for training; (2) that the continuation of the "job seniority" system, or any seniority system which incorporates job seniority as a substantial factor in promotion, demotion and selection for training, operates, because of the situation engendered by the pervasive past discrimination by the defendants at Crown's Bogalusa paper mill, to effectively presently discriminate against Negro employees at the mill whenever Negro employees hired prior to January 1966 compete against white employees for promotion, demotion or selection for training; (3) that a system of "mill seniority," as defined in the Collective Bargaining Agreement between Crown and the local unions presently in

force at the Bogalusa plant, would not have such a continuing discriminatory effect against the Negro employees; and (4) that "job seniority," as a consideration in the promotion and demotion of employees within a particular line of progression and in the selection of employees for training, is not necessitated by safety or efficiency factors, nor for any other reason is "job seniority" objectively a better or more desirable basis than "mill seniority" for promotion, demotion or selection for training of employees within the context of the present lines of progression in force at Crown's Bogalusa paper mill.

■ As a matter of law, we hold that this Court has jurisdiction of this action under 42 U.S.C. § 2000e–6(b) and 28 U.S.C. § 1331 and § 1345, and that discrimination against Negroes with respect to employment opportunities at this mill is properly subject to attack by the government pursuant not only to Title VII of the Civil Rights Act of 1964,[1] but also under § 209 of Executive Order 11246.[2] That order, like the order in Farkas v. Texas Instrument, Inc., 375 F.2d 629, 632 (5th Cir. 1967), is to be accorded the force and effect of statutory law. 375 F.2d 632, n. 1 and text.

■ The white local is not immune from suit or injunctive process of this Court by reason of the general terms of the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq. Even prior to the enactment of Title VII, the Supreme Court had held that racial discrimination by a union was not sanctioned or protected from corrective court orders by the Norris-LaGuardia Act. Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937); Gra-

ham v. Brotherhood of Locomotive Firemen & Enginemen, 338 U.S. 232, 70 S. Ct. 14, 94 L.Ed. 22 (1949); Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 774, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952). These decisions were not predicated on any peculiarity in the anti-discrimination provisions of the Railway Labor Act, Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 458, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957), and we find the holdings of these cases equally applicable to the provisions of Title VII and Executive Order 11246. Merely because § 706 of Title VII, 42 U.S.C. § 2000e–5(h), (authorizing private suits for the correction of Title VII violations), contains an express exemption from the anti-injunction provisions of the Norris-LaGuardia Act, while § 707, 42 U.S.C. § 2000e–6, (authorizing civil actions by the Attorney General), does not, fails to influence our holding. Section 707 provides, in the broadest possible language, for the protection of Title VII rights by suit by the Attorney General seeking "permanent or temporary injunction, restraining order or other order against the person or persons responsible * * * as [may be] necessary to insure the *full enjoyment* of [Title VII] rights." (emphasis supplied) 42 U.S.C. § 2000e–6(a). This language cannot be read to prohibit the remedy against unions which may be responsible for Title VII violations. Title VII read as a whole forbids such a restrictive interpretation. Section 2000e(a) defines "person" to include "one or more individuals, *labor unions,* * * *;" § 2000 e–2(c) specifically lists the acts of labor organizations which constitute "unlawful employment practices" under Title VII; § 2000e–2(c) (3) makes it unlawful for a labor organization "to cause or attempt

1. The parties have stipulated that Crown is an employer within the meaning of 42 U.S.C. § 2000e(b) and is engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(h), and that Local 189 and its parent union are labor organizations within the meaning of 42 U.S.C. § 2000e(d) and are engaged in an industry affecting commerce within the meaning of 42 U.S.C. 2000e(e).

2. The parties have stipulated that, "Since at least 1961, the defendant, Crown, has supplied materials under government contracts and subcontracts, which contain equal employment opportunity clauses similar to or the same as those appearing [in] the Executive Order 11246 and Executive Order 10925, to the extent required by those orders."

to cause an employer to discriminate against an individual in violation of [Title VII]." To hold injunctive remedies against such unlawful union practices available to individuals under § 706 and not to the Attorney General seeking to correct what will usually be much more serious and pervasive "patterns or practices of resistance" under § 707 would be inconsistent and irrational, and destructive to the national achievement of the basic aims of Title VII.

It is undisputed—in fact, the ultimate facts compelling the conclusion have been stipulated by all parties—that prior to May 1964 Crown followed an active program of discrimination in employment opportunities against its Negro employees at its Bogalusa plant, and that not until January 1966 were considerations of race fully obliterated with respect to the job opportunities of the employees at the plant. Although not equally responsible for this situation, the white local was in good measure at fault: the discrimination against Negro employees was possible because Local 189 was all white, and Negro employees excluded from that local had an organization of their own, Local 189a; discrimination was arranged by the device of granting "jurisdiction" over the more attractive lines of progression and the more lucrative jobs to the white local.

■ In the circumstances of this case, the seniority and recall system which defendant unions and defendant Crown maintained in effect at the Crown, Bogalusa, Louisiana paper mill prior to February 1, 1968, perpetuates the consequences of past discrimination, and is unlawful under Title VII of the Civil Rights Act of 1964, and under Executive Order 11246 and the contractual clauses required thereby. Obviously, that seniority system was not a *bona fide* seniority system within the meaning of § 703(h) of Title VII. See Quarles v. Philip Morris, Inc., 279 F.Supp. 505 (E.D. Va.1968).

The government and plaintiff-intervenors have pressed on the Court the injustice of the "job seniority" system, its contribution to discrimination at Crown's Bogalusa plant, and the advantages of "mill seniority" over "job seniority." Although we agree with the application of these arguments to the situation involved here, we think it important to correctly express the underlying basis of this approach. "Job seniority" is certainly not *inherently* prejudicial to Negroes; there is nothing about "job seniority" systems themselves to make them necessarily offensive; nor do we think "mill seniority" necessarily a better system. It is not the job seniority system in and of itself, but rather the continuous discrimination practiced by the defendants within the framework of that system, which now requires that the system be abolished in this case. Within the framework of a "job seniority" system, Negro employees have been forced into the inferior lines of progression and the less desirable jobs. The defendants claim that active discrimination against Negroes has now ceased. But the fact that Negroes who, under the present liberalized policy, have only recently entered formerly white progression lines are forced to compete with white employees for promotion on the basis of "job seniority" continues, in each case of such competition, the discriminatory effect of the long history of the relegation of those Negroes to other, less desirable lines.

■■ We cannot accept the Union's contention that such discrimination is not prohibited by Title VII and that Title VII cannot be used in any way to alter or affect seniority systems. Where a seniority system has the effect of perpetrating discrimination, and concentrating or "telescoping" the effect of past years of discrimination against Negro employees into the *present* placement of Negroes in an inferior position for promotion and other purposes, that present result is prohibited, and a seniority system which operates to produce that present result must be replaced with another system. We agree wholeheartedly with the conclusion in Quarles v. Philip Morris, Inc., 279 F.Supp. 505 (E.D.Va.

1968), that present discrimination cannot be justified under Title VII simply because Title VII refers to an effective date and because present discrimination is caused by conditions in the past. "Congress did not intend to freeze an entire generation of Negro employees into discriminatory patterns that existed before the act." Quarles, supra, at 516.

We find that "mill seniority" is at least as good, if not better, than "job seniority" as the basis for regulating promotion, demotion and selection of employees for training. The contention that mill seniority does not allow full consideration of employee experience as one of the qualifications for promotion is, on its face, without merit, since the government seeks at this time only to supplant the test for promotion of employees to a vacant "job slot" from the job slots directly below the vacant slot in the same line of progression. In this situation, all employees competing for the vacant job will have had some previous experience in the progression line. Moreover, we by no means deny Crown the right to require that the competing employees have the fundamental qualifications necessary to fill the vacant position.

The Union asserts that the Court should stay its hand to give the white local a chance to bargain with Crown for a system which would produce a result fair to Negro employees. We cannot sympathize with this approach. This defendant Union bears some responsibility for the past discrimination and the present plight of the Negro employees under the "job seniority" system. The "mill seniority" system required by the Court would mitigate the harshness of this situation. The defendant Union does not seriously attack mill seniority as unfair, but principally questions the right of this Court to order any particular seniority system into effect.

■ As we have indicated, we do not hold that "mill seniority" is *per se* required under Title VII. But we do hold that, where, as here, "job seniority" operates to continue the effects of past discrimination, it must be replaced by

some other, nondiscriminatory, system, and that mill seniority is an appropriate system in this case. We do not deny, by our present order, the right of Crown to urge some other equally acceptable system, if there be any, by which to control the flow of employee promotion and demotion, or the right of Local 189 to bargain for any such system. But we cannot permit the plaintiffs herein to remain without a remedy to present and continuing discrimination merely because the remedy called for involves matters which may be subject to the bargaining efforts of unions. Title VII provides for the correction of discriminatory practices by any remedial order which may be necessary; the scope of the remedy is not restricted to matters outside the jurisdiction of labor organizations. 42 U.S.C. § 2000e–6. Should an acceptable system other than "mill seniority" be proposed by any interested party, nothing herein would prohibit the Union from bargaining for it or Crown from implementing it, subject, of course, to the approval of the Court.

Because the defendant Union was unwilling to consent to a further extension of the Court's temporary restraining order pending a full-scale hearing of all issues in this case, only the two issues mentioned above were submitted to the Court at the hearing on March 20. All parties agreed to try the remaining issues before the Court on April 30, 1968. Because of the limited nature of the March 20 hearing, the basic relief required in view of the Court's findings with respect to the two issues submitted at that hearing may reasonably be expected to require some modification to accommodate whatever findings may be forthcoming after the more extensive hearing on April 30. The relief we grant by the present order we think adequately protects the plaintiffs with respect to the two limited issues which have been presented to us; but the relief granted should in no way operate to prejudice the outcome of the more extensive hearing to be held on the remaining issues so closely related to those already presented.