SAVANNAH PRINTING SPECIALTIES
& PAPER PRODUCTS LOCAL UNION
604, an unincorporated labor organiza-
tion, Plaintiff,

v.

UNION CAMP CORPORATION,
Defendant.

Civ. A. No. 2901.

United States District Court,
S. D. Georgia,
Savannah Division.

Nov. 10, 1972.

James W. Head, Savannah, Ga., John S. McClellan, Kingsport, Tenn., for plaintiff.

Robert M. Williams, Bouhan, Williams & Levy, Savannah, Ga., for defendant.

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAWRENCE, District Judge.

This suit is brought under the Labor-Management Relations Act of 1947. It grows out of the refusal of Union Camp Corporation to arbitrate the grievance of certain members of the plaintiff Union (Local 604) in respect to a dispute concerning seniority and layoff. The complaint alleges that defendant's refusal to submit to arbitration is a

breach of the arbitration provision of a Labor Agreement entered into between the parties on June 1, 1971, and that it constitutes a violation of 29 U.S.C. § 185.[1] Plaintiff seeks an order to compel defendant to arbitrate and prays for declaratory relief and damages.

Union Camp has moved to dismiss the complaint for failure to state a claim. It contends that the grievance is not arbitrable for the reason that the seniority standards that determined who was to be laid off or retained are mandated by the Office of Federal Contracts Compliance (OFCC) acting pursuant to Executive Order 11246 which provides that all Government contracts shall contain a clause ensuring non-discrimination. "The contractor will take affirmative action to ensure that applicants are treated during employment, without regard to their race," including upgrading, demotion, transfer, layoff or termination.[2] Among the sanctions that may be imposed by OFCC are cancellation of contract, specific performance and exclusion from future Government contracts.

The Affirmative Action Compliance Program which was instituted by Union Camp effective July 23, 1970, changed the seniority system from the traditional "job" basis to a "Division" standard.[3] This action to compel arbitration of the grievances is an outgrowth of the resulting effect as to layoff of certain employees in the Printing Department.

Union Camp has submitted affidavits in support of its motion to dismiss. Pursuant to Rule 12(c), defendant requests that it be treated as one for summary judgment. The United States through the Department of Justice appears as *amicus curiae*. A brief has been submitted in support of Union Camp's position. All agree that the issue presented is one of law.

I have this day overruled a motion by Union Camp for partial summary judgment in a class action brought under Title VII by black employees who allege discrimination in employment practices by the Company and by various unions.[4] The basis of the motion in that litigation is that no injunctive relief as to Union Camp is necessary or is in order in view of its implementation of the Affirmative Action Compliance Program required by OFCC.

The compliance agreement referred to created what is called an "Affected Class" consisting of minority employees. In respect to competition for job status by employees in the favored class "Division seniority will be the sole seniority factor considered."[5] The latter practice is claimed to inhibit or discourage transfer from traditional black to traditional white jobs because of the forfeiture of

---

1. Section Eight provides that in the event of a grievance by an employee who is covered by the Agreement a Board of Arbitration will convene as expeditiously as possible and render a "final and binding" decision within ten days. Such Board consists of one Arbitrator selected by the Company, one by the Union and a third by the American Arbitration Association. In the present case the grievances are identical, the layoff of the aggrieved employees instead of persons over whom they had superior job security, contrary to the terms of the labor contract of the Union and the Company.

2. 3 CFR 339 (1965). For a history of Executive Order 11246 see, James R. Beaird, "Racial Discrimination in Employment: Rights and Remedies," 6 Georgia Law Review (1972) 469–473.

3. The four major divisions at Union Camp's Savannah plant are the Bag, Container, Chemical, and Unbleached Paper and Board Divisions.

4. See Boles et al. v. Union Camp Corporation et al., C.A. No. 2804. Local 604 and its International are not named as defendants in that litigation.

5. The "Affected Class" is made up of minority employees hired prior to 1970 who were assigned: (1) to jobs not in lines of progression; (2) jobs from which there was little movement and (3) jobs in which minority growth employees constituted more than 50% of the incumbents.

seniority involved in such instances, the result being that black employees are locked in the poorer paying jobs to which they were relegated by past discrimination.

The complaint in the present case grows out of the impact of the Affirmative Action Program upon certain members of Local 604 who were laid off in April, 1971. The layoff was the result of a reduction of the work force in the Printing Department due to lack of business. None of the eleven aggrieved employees are members of the "Affected Class." Three of them are blacks. The employees who were retained had less seniority in the Department than the grievants possessed but greater "Division" seniority. All of the complaining employees were hired by Union Camp late in 1970 or early in 1971. The black employees who were not laid off had been with the Company for many years though not in the Printing Department.

It may be useful to take a further look at the background of the Affirmative Action Program approved by OFCC in 1970. On January 29, 1969, the black plaintiffs in the Title VII action against Union Bag mentioned above filed charges with that agency, enumerating fourteen discriminatory practices or acts based on race.[6] The Company had been doing business with the federal government for some time. Since 1962 it had been an Equal Opportunity Employer under Executive Order 10925. An affirmative Action Program was first established by Union Camp in 1969 under the supervision of OFCC. Following the filing of the complaint by certain black employees that year, an extensive investigation of the Company's employment practices was undertaken by Compliance officials in conjunction with the Defense Supply Agency. The employer was informed in April, 1969, that nine of the claims were sustained. The Affirmative Action Program instituted by the Company in 1969 was unacceptable and corrective action was required in a number of areas. Negotiations followed. A new program was submitted by Union Camp and was found wanting. In December, 1969, defendant was informed that the seniority standards would have to conform to the plant-wide principles of seniority mandated by federal courts in the Crown Zellerbach cases.[7] Subsequently, OFCC notified the Company that it wished to "finalize this matter by March 23, 1970." On April 3rd a directive was sent to the effect that unless a revised Program was received by April 22, 1970, a thirty-day show cause order would be issued in connection with contract debarment. The result of this ultimatum was the Affirmative Action Program, approved by OFCC, which became effective on July 23, 1970.

██ Executive Order 11246 is based on the inherent or implied power of the executive branch to determine the terms and conditions under which the United States will contract. It is a valid exercise of presidential authority and possesses the force of statutory law. United States v. Local 189, *supra*, 282 F.Supp. 39 at 43; Contractors Association of Eastern Pennsylvania v. Schultz, 442 F. 2d 159 (3rd Cir.); Southern Illinois Builders Association v. Ogilvie, 327 F. Supp. 1154, 1161 (S.D., Ill.); Joyce v. McCrane, 320 F.Supp. 1284, 1290 (D. N.J.). In Title VII and in the Equal Employment Opportunities Act of 1972 Congress has recognized the validity of the Executive Order. See 42 U.S.C. § 2000e–8(d) and § 2000e–16.

The position of Local 604 is simple. It argues that the labor contract with Union Camp requires arbitration of

---

6. At the same time they filed charges of racial discrimination with the Equal Employment Opportunity Commission which furnished a suit letter in April, 1971.

7. Crown Zellerbach Corporation v. Wirtz, 281 F.Supp. 337 (D.C., Dist. Columbia) and United States v. Local 189, United Papermakers and Paperworkers and Crown Zellerbach Corporation, 282 F. Supp. 39 (E.D., La.), aff'd. 416 F.2d 980 (5th Cir.).

grievances involving seniority and lay-off; that the arbitrator's award is final and binding on the merits of the controversy as well as the meaning of the contract, and that the sole role of the federal courts is to determine whether the employer agreed to arbitrate. Plaintiff Union lays much store by the declared national policy reflected in the Labor-Management Relations Act and on decisions emphasizing the importance of the arbitral process in the preservation of industrial peace.[8]

 Just as firmly rooted in law and federal policy is the outlawing of discrimination in employment based on race, color, creed or sex. It is hardly the part of the arbitration function to decide which policy is paramount. Seniority and other practices violative of Title VII or Executive Order 11246 through perpetuation of racial discrimination in employment are unlawful irrespective of any conflicting provisions of a collective bargaining contract: Southern Illinois Builders Association v. Ogilvie, *supra,* 327 F.Supp. 1154, 1161; Contractors Association of Eastern Pennsylvania v. Schultz, *supra,* 442 F.2d 159 at 174; United States v. Sheet Metal Workers International Association, 416 F.2d 123 at 132, note 16 (8th Cir.); United States v. Carpenters Local 169, 4 EPD [CCH] § 7610, at 5400 (7th Cir.). Provisions in collective bargaining agreements having a racially discriminatory impact are unlawful under the National Labor Relations Act. Steele v. Louisville & Nashville Railroad Co. et al., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive Firemen and Enginemen et al., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187.

 If arbitration can result in obstructing or thwarting the eradication of racial discrimination in employment, an employer is not forced to go through with it. The new seniority provisions were entered into under the laws of the United States and pursuant to its public policy and cannot be diluted by private negotiation or arbitration. Union Camp cannot obey both the Government and an adverse arbitration award. The Agreement with Local 604 recognizes that there is no liability on its part for failure to comply with any provision "when such non-compliance is occasioned by circumstances beyond its control." A contractual duty is excused in cases where intervening government regulations render performance impossible. 17A C.J.S. Contracts § 467; 17 Am.Jur.2d § 419; 84 A.L.R.2d 45–57; 6 Williston Contracts §§ 1938, 1939. This does not mean that the arbitration section of the collective bargaining agreement is a nullity. It retains vitality in all respects save those instances where resort to the arbitral process may prevent the employer from complying with Title VII and Executive Order 11246 and from implementation of the Affirmative Action Compliance Program.

It is true that the Company's change from the "job" to "Division" standard of seniority was unilateral as far as the affected unions were concerned.[9] It is also true that such action was voluntary on its part. I should say voluntary in a

8. See United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898.

9. The directive of August 26, 1970, of the Defense Supply Agency, advising of the approval of the Program by OFCC, requested that negotiations be entered into with the collective bargaining agencies involved. Affidavit of E. J. Bartlett, Ex. B. The Company notified the plaintiff Union of the seniority changes. The record does not reflect that there was any objection at that time. The seniority considerations afforded members of the Affected Class have been repeatedly applied in situations involving other unions. The only grievances filed are those by the members of Local 604.

sense. To contend that Union Camp did not have to agree to the seniority system imposed by OFCC is to shut one's eyes to the facts of modern industrial life. The evidence does not reveal the volume of business done by the Company with the United States Government. I gather that it is substantial. The importance of federal contracts to industry is indicated by the fact that one-third of the work force in this country is said to be affected by the Executive Order.[10]

But the point is that the changes in the seniority system in effect at Union Camp were required not only by such Order but independently thereof were necessary under Title VII. Where there exists a history of racial job assignment patterns, an existing seniority system that perpetuates past discriminatory employment practices must be uprooted and replaced as respects minority employees by a mill-wide or division seniority standard. See United States v. Local 189, United Papermakers and Paperworkers and Crown Zellerbach Corporation, 282 F.Supp. 39, *supra,* at 44, aff'd. 416 F.2d 980; Quarles v. Philip Morris, Incorporated, 279 F.Supp. 505 (E.D., Va.); United States v. Jacksonville Terminal Company, 451 F.2d 418 (5th Cir.), cert. denied 406 U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815; Robinson v. Lorillard Corporation, 444 F.2d 791 (4th Cir.); United States v. Bethlehem Steel Corporation, 446 F.2d 652 (2nd Cir.); Long v. Georgia Kraft Company, 328 F.Supp. 681 (N.D., Ga.), reversed on other grounds, 450 F.2d 557. Title VII imposes on unions a corresponding obligation as to non-discrimination. See 42 U.S.C. § 2000e–2(c), (1), (2), (3).

Union Camp properly refused to arbitrate the seniority and layoff grievances. The complaint fails to state a claim for relief and is dismissed.

I will add that nothing said or decided in this case is determinative as to the contentions of the parties to the action

referred to above which was brought by black plaintiffs against Union Camp and various Unions under Title VII and 42 U.S.C. § 1981.

---

10. See Beaird, "Racial Discrimination in Employment: Rights and Remedies," *supra,* 6 Georgia Law Review at 470.

See also Crown Zellerbach Corporation v. Wirtz, 281 F.Supp. 337, 339–340 (D.C., Dist. Columbia).