**V. W. FREEZE et al., Plaintiffs,**

v.

**ARO, INC., etc., Defendant.**

**Civ. No. 4–79–17.**

United States District Court,
E. D. Tennessee,
Winchester Division.

Nov. 26, 1980.

George E. Barrett, Barrett, Lenahan, Kniffen & Ray, Nashville, Tenn., for plaintiffs.

William N. Ozier, Nashville, Tenn., John H. Cary, U.S. Atty., Knoxville, Tenn. by John C. Cook, Asst. U.S. Atty., Chattanooga, Tenn., Robert T. Moore and Richard S. Ugelow, Dept. of Justice and Mindy Farber, Dept. of Labor, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDERS

NEESE, District Judge.

This is an action involving so–called reverse–discrimination. The central issue presented is whether a private employer discriminated unlawfully against one of its white employees when, at the insistence of the Secretary of Labor (the Secretary), it accorded preferential seniority–rights to

one of its black employees thereby eroding the seniority of the white employee. The employer contends that its discrimination was not unlawful; the Secretary agrees; and so does the Court.

There is no genuine issue as to any material fact.[1] *See* Rule 56(c), Federal Rules of Civil Procedure. The defendant ARO, Inc. (ARO) is engaged in the operation and maintenance within this district and division of the Arnold Engineering Development Center at the Arnold Air Force Base near Tullahoma, Tennessee. ARO does so under one or more contracts with the Air Force.

As a governmental contractor, ARO is subject to the provisions of Executive Order 11246 and the regulations adopted thereunder. That executive order, as amended, "* * * requires all applicants for federal contracts to refrain from employment discrimination and to 'take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin.' * * *" *Steelworkers v. Weber* (1979), 443 U.S. 193, 223, 99 S.Ct. 2721, 2737, 61 L.Ed.2d 480, 501, n.2 (Rehnquist, J., dissenting opinion).

The Secretary of Labor, or his delegate, is charged with enforcing such executive order.[2] *Idem.* The order itself "* * * empowers the Secretary of Labor to issue rules and regulations necessary and appropriate to achieve its purpose. * * *" *Idem.* To achieve such enforcement, and particularly "* * * to coerce acceptance of its affirmative action plans * * *," the Secretary of Labor "* * * employs the 'power of the purse' * * *." *Idem.* Either the federal

contractor does what the Secretary says, or it loses its privilege of contracting with the national sovereign.

At various times over the past decade or more, the Secretary of Labor accused ARO of not conforming with the non-discrimination obligations imposed on it by the aforementioned executive order and its predecessors. At the heart of the controversy was the charge that, in the past, ARO had discriminated against certain of its black employees who had been assigned initially by it to the janitor-cleaner and laborer job classifications. The Secretary determined from his investigations that ARO had discriminated against these individuals in violation of the pertinent executive orders. He was committed to forcing ARO to remedy the effects of such unlawful employment practices in an effort to make these individual employees whole for the wrongs that he felt had been done to them by their employer.

As a part of the remedial relief necessary, the Secretary insisted that when one of these persons who had been hired prior to June 27, 1970 obtained a position as a security guard and transferred into the separate guards-bargaining unit, he should be allowed to maintain his original date-of-hire seniority. This was contrary to a provision of the collective bargaining agreement which did not allow for such carry-over or plant-wide seniority but required the transferee to be placed at the bottom of the seniority-roster for the guards unit.

Mr. B. D. Taylor, a black employee of ARO who had been assigned initially as a janitor-cleaner and who was hired prior to June 27, 1970, transferred into the guards

1. Each of the parties moved for a summary judgment. Rules 56(a), (b), Federal Rules of Civil Procedure. (The motion of the plaintiffs was for a judgment on the pleadings, Rule 12(c), Federal Rules of Civil Procedure, or, in the alternative, for a summary judgment. Since matters outside the pleadings were considered by the Court, the motion of the plaintiffs was considered only in its latter alternative. *See* Rule 12(c), *supra*.)

2. At the present time, the Secretary of Labor has delegated most enforcement duties to the

Office of Federal Contract Compliance Programs. *Steelworkers v. Weber, supra.* Previously, the Agency for International Development of the United States Department of State and the General Services Administration had been delegated contract-compliance authority with regard to ARO. For the sake of simplicity, the Court will refer herein to the Secretary of Labor as the arm of the Executive Branch charged with overseeing the enforcement of Executive Order 11246.

unit on October 12, 1978. Pursuant to two conciliation agreements entered into between ARO and the Secretary, in an effort to resolve the government's charges of unlawful racial discrimination by ARO, and pursuant to the direct orders of the Secretary, ARO permitted Mr. Taylor to retain his original date–of–hire seniority after his transfer into the guards unit. This placed Mr. Taylor above the plaintiff Mr. V. W. Freeze, a white man who had been employed by ARO as a security–guard since June 15, 1978, on the seniority roster for the guards unit.

Contending that this constituted unlawful reverse–discrimination against him in his employment, Mr. Freeze filed a charge with the Equal Employment Commission and received a notice of his "right to sue" on March 21, 1979. Additionally, the plaintiff–union filed a grievance under the collective bargaining agreement claiming that ARO had breached the seniority provisions of that agreement. ARO refused to process such grievance past the second step of the grievance and arbitration procedure.

The principal thrust of the plaintiffs' claim herein in that ARO violated the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. It is claimed it afforded preferential seniority–treatment to Mr. Taylor on account of his race and at the expense of Mr. Freeze and other employees situated similarly.

■ It is clear that Title VII protects white persons as well as black persons, from certain forms of racial discrimination in employment. *McDonald v. Santa Fe Transp. Co.* (1976), 427 U.S. 273, 280, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493, 501 [5]. However, *McDonald, supra*, was not a case involving affirmative action or relief, and any interpretation of Title VII (that would forbid all race–conscious affirmative action or relief) would bring about an end completely at variance with the purpose of Title VII and "* * * must be rejected. * * *" *Steelworkers v. Weber, supra*, 443 U.S. at 201, 99 S.Ct. at 2726, 61 L.Ed.2d at 488. Therefore, as has been stated in a somewhat similar context,

* * * a case involving a claim of discrimination against members of the white majority is not a simple mirror image of a case involving claims of discrimination against minorities. One analysis is required when those for whose benefit the Constitution was amended or a statute enacted claim discrimination. A different analysis must be made when the claimants are not members of a class historically subjected to discrimination. When claims are brought by members of a group formerly subjected to discrimination the case moves with the grain of the Constitution and national policy. A suit which seeks to prevent public action designed to alleviate the effects of past discrimination moves against the grain * * *.

*Detroit Police Officers' Ass'n v. Young*, C.A. 6th (1979), 608 F.2d 671, 697 [54–56].

■ ARO's reason for allowing Mr. Taylor to retain his date–of–hire seniority after his transfer into the guards unit is clear: it was necessary for it to reach a settlement of the Secretary's claims of unlawful employment discrimination in order to keep its privilege of contracting with the federal government. The Secretary advised ARO it was required to remedy the effects of its past discrimination by providing for such carry–over seniority, and ARO agreed to so do in an effort to conciliate the dispute and continue its contracting relationship with the government. In this circuit, as a matter of law, a conciliation agreement reached in settlement of a claim of unlawful discrimination in employment cannot constitute an independent act of discrimination "* * * unless there are allegations of bad faith in making the agreement, that is, allegations that the agreement was not a bona fide attempt to conciliate a claim but rather an attempt to bestow unequal employment benefits under the guise of remedying discrimination. * * *" *EEOC v. McCall Printing Corporation*, C.A. 6th (1980), 633 F.2d 1232, 1238.

■ Herein, the plaintiffs do not allege that the conciliation agreement between the Secretary and ARO was not a bona fide

attempt to conciliate the claim of discrimination by the Secretary. Neither is it averred that the conciliation agreement reached was an attempt to bestow unequal employment benefits under the guise of remedying discrimination. Thus, the conciliation agreement between the Secretary and ARO could not be the basis of a Title VII action by the plaintiffs.

The Secretary of Labor, acting under the authority given him by Executive Order 11246 and its predecessor, determined that Mr. Taylor had been discriminated against unlawfully by ARO and sought to remedy that discrimination by making Mr. Taylor whole.[3] Under those circumstances "* * * retroactive seniority [was] an appropriate remedy and thus could properly be used as a term in the conciliation agreement * *." *Ibid.*, 633 F.2d at 1237, citing *Franks v. Bowman Transportation Company* (1976), 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444.

"* * * Unfortunately, whenever one employee is given increased seniority rights, the acquisition of such rights often conflicts with the economic interests of other employees. This unfortunate consequence does not preclude conciliation agreements or consent decrees granting relief designed to correct the wrongs to which Title VII [and Executive Order 11246 are] directed. * * *" *Idem.* (citations omitted). "* * * [C]oncern for the interests of white employees cannot be allowed to thwart achievement of the state's goals. It is reasonable for some persons innocent of wrongdoing to bear some burden in order to correct the harsh effects of a grievous wrong * * *." *Detroit Police Officers' Ass'n v. Young*, C.A. 6th (1979), 608 F.2d 671, 696 [51].

The plaintiffs ask also that the Court order ARO to process the grievance filed on

behalf of Mr. Freeze by his local union. The Court is of the opinion that, under the circumstances presented herein, ARO was not required to have processed such grievance past the second step.

In their collective bargaining agreement, ARO and the plaintiff union agreed *inter alia* that they would "* * * provide equal employment opportunity and affirmative action * * *" and that both of them would "* * * comply with Executive Order 11246 * * *." It was agreed also that, should any provision of the collective bargaining agreement or any application of it, become unlawful by virtue of any executive order of the president, such provision or its application would be modified by them to comply with the law.

Once the Secretary of Labor determined that ARO's compliance with Executive Order 11246 required that Mr. Taylor be permitted to retain his date–of–hire seniority upon his transfer to the guards unit, both ARO and the local union were bound thereby regardless of any inconsistent provision of the collective bargaining agreement. That executive order had "* * * the force and effect of law * * *," *United States v. New Orleans Public Service, Inc.*, C.A. 5th (1977), 553 F.2d 459, 465 [1], vacated on other grounds (1978), 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783, and any inconsistency in the contract of the parties would have to yield thereto. *See Savannah Print. Spec. & P. P. Loc. U. 604 v. Union Camp. Corp.*, D.C.Ga. (1972), 350 F.Supp. 632, 638 [5–7]; cf. *International Union, Etc. v. Rockwell Intern. Corp.*, C.A. 6th (1980), 619 F.2d 580 (a decision of the NLRB takes priority over a conflicting arbitration award).

Since any erosion in the seniority rights of Mr. Freeze had been mandated by the

---

**3.** Similarly, in the context of a Title VII action, this Court found that ARO had "* * * engaged initially in a usual pattern of unlawful employment discrimination against [another of its black employees Mr. James N. Kennerly] and other of its black janitor–cleaners and laborers in matters of promotions and training. * * *" *Kennerly v. ARO, Inc.*, D.C.Tenn. (1977), 447 F.Supp. 1090, 1097. Upon so finding, the Court recognized that Mr. Kennerly was "* * * entitled to be placed in such a position as he would have been were it not for the unlawful discriminatory conduct of ARO * * *" and was prepared to order such affirmative relief as might have been appropriate to remedy the effects of the unlawful employment practices which were found. *Ibid.*, 447 F.Supp. at 1101 [41, 42]. The parties were able to reach voluntarily a compromise and settlement of that action.

Secretary of Labor, acting pursuant to Executive Order 11246, there was nothing to arbitrate, and ARO was not required to engaged in the idle gesture of processing the grievance to arbitration. *Savannah Print. Spec. & P. P. Loc. U. 604 v. Union Camp. Corp., supra,* 350 F.Supp. at 636–637 [5–7], [8]. It results that the motion of the plaintiffs for a summary judgment hereby is DENIED, and the respective motions of the defendants for summary judgment on the original claim of the plaintiffs, each, hereby is GRANTED. Rule 56(c), Federal Rules of Civil Procedure.

Summary judgment will enter that the plaintiffs Mr. V. W. Freeze and Local Union No. 46, International Guards Union of America, hereby are denied all relief herein from the defendants ARO, Inc., Mr. Ray Marshall, and the Office of Federal Contract Compliance. Rule 58(1), Federal Rules of Civil Procedure. By counterclaim against the local union, the federal defendants seek injunctive relief, prohibiting the union "* * * from any further interference or obstruction with ARO, Inc.'s compliance with its contractual obligation under Executive Order 11246 * * *." The record before the Court does not demonstrate in the least that the plaintiffs-by-counterclaim are entitled to such extraordinary relief; therefore, their motion for summary judgment hereby is DENIED insofar as it relates to the counterclaim. Rule 56(c), *supra.* That claim for injunctive relief hereby is assigned for trial[4] in the courtroom of the United States Courthouse, Winchester, Tennessee, commencing Monday, December 8, 1980 at 12:30 o'clock, p. m. or as soon thereafter as the matter is reached on the Court's calendar.

---

4. There is no purpose to be served in holding a pretrial conference on this remaining claim.