271 F.Supp. 447 (1966)
UNITED STATES of America, Plaintiff,
v.
BUILDING AND CONSTRUCTION TRADES COUNCIL OF ST. LOUIS, MISSOURI, AFL-CIO et al., Defendants.
No. 66 C 58(2).
United States District Court E. D. Missouri, E. D.
July 26, 1966.
*448 *449 Richard D. FitzGibbon, Jr., U. S. Atty., R. H. Kubie, Asst. U. S. Atty., Gerald W. Jones and Wm. F. McCabe, Attorneys, Southwestern Section, Civil Rights Div. U. S. Dept. of Justice, Washington, D. C., for plaintiff.
Clyde Craig, Jean Souders and Harold Gruenberg, St. Louis, Mo., for defendant Laborers Local 42.
Charles A. Werner, Schuchat, Cook & Werner, St. Louis, Mo., for defendants Locals 1 and 36.
Malcolm L. Bartley and Donald Siegel, Bartley, Siegel & Bartley, Clayton, Mo., for defendants Bldg. & Const. Trades Council & Local 35 and St. L. Journeymen Plumbers.

MEMORANDUM
MEREDITH, District Judge.
This matter is pending on motions to dismiss, or in the alternative for a more definite statement, interposed by the various defendants. The defendants are the Building and Construction Trades Council of St. Louis (Trades Council), Pipefitters Local No. 562 (Pipefitters), Sheet Metal Workers Local No. 36 (Sheet Metal Workers), Electricians Local No. 1 (Electricians), Laborers Local No. 42 (Laborers) and Plumbers Local No. 35 (Plumbers). A short statement of the nature of the complaint is necessary before turning to the grounds urged as requiring dismissal.
Plaintiff's first claim is labeled a common law action for interference with contractual relations. More specifically, it is alleged that defendants (with the exception of the Plumbers) have tortiously interfered with the performance of the nondiscrimination clause, required by Executive Order 11246, in a contract between the National Park Service and Hoel-Steffen Construction Company. Hoel-Steffen is the prime contractor for the Visitors Center at the Jefferson National Expansion Memorial (Gateway Arch). This contract included the so-called "affirmative action" covenant which required Hoel-Steffen to take affirmative action to insure equal employment opportunities at the Visitors Center. Hoel-Steffen was required to insert a nondiscrimination clause in all subcontracts for work on the project. The complaint alleges that Hoel-Steffen, in order to comply with the "affirmative action" covenant, entered into a subcontract with a plumbing contractor (E. Smith Plumbing Company) who employs members of the Congress of Independent Unions which does not discriminate against Negroes. Subsequently, after unsuccessful efforts to get the E. Smith Plumbing Company taken off the job, the Trades Council, of which all the defendant unions are affiliates, issued a statement that the rank and file of its affiliates did not wish to work at the project because non-affiliates of the AFL-CIO were to be employed. The defendant unions complied with this policy and refused to work. Plaintiff contends these actions were taken for the purpose of preventing Hoel-Steffen from complying with the nondiscrimination clause in its contract with the United States. Plaintiff prays for an order enjoining the defendants (except Plumbers) from taking any action to interfere *450 with or frustrate the nondiscrimination and affirmative action covenants in the contract between the United States and Hoel-Steffen.
Plaintiff's second claim charges the defendants (with the exception of Laborers) with a violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e through 2000e-15). This action is brought under § 707 of the Act, 42 U.S.C. § 2000e-6, and alleges that the defendants have engaged in a pattern or practice of resistance to the exercise by Negroes of rights secured by the statute and that the pattern or practice is intended to and does deny the full exercise of those rights. Plaintiff prays that the defendants (except Laborers) be enjoined from discriminating against any individual by reason of his race with regard to union membership, apprenticeship and training programs, or from in any way acting so as to deprive an individual of, or to limit his, employment opportunities by reason of his race, or from causing or attempting to cause any employer to discriminate against any individual because of his race.
The motions to dismiss presently before the Court attack this complaint from every conceivable direction. The following grounds are urged for the dismissal of the first claim: (1) that the actions and conduct complained of are subject to the exclusive primary jurisdiction of the National Labor Relations Board (NLR B); (2) that the NLRB has taken jurisdiction of a complaint involving this same subject matter and that an injunction entered on February 7, 1966, in this Court, in cause No. 66 C 50(3), in connection with the NLRB proceedings renders the present complaint moot; (3) that the requested injunctive relief is prohibited by the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115; (4) that an adequate remedy at law exists under Title VII of the Civil Rights Act of 1964; (5) that the first claim fails to state a claim upon which relief can be granted; (6) that the first claim violates Rule 8 (a) (3) of the Federal Rules of Civil Procedure in that it contains no request for judgment; and (7) that the defendants are voluntary, unincorporated associations and are not amenable to suit on this claim. The grounds urged for dismissal of the second claim are: (1) that injunctive relief is prohibited by the Norris-LaGuardia Act; (2) failure to state a claim upon which relief can be granted; (3) lack of subject matter jurisdiction due to the failure of the complaint to allege that the Attorney General had reasonable cause to believe that there is such a "pattern or practice", as allegedly required by § 707 of the Act, 42 U.S.C. 2000e-6, and the failure to set out the facts constituting such a pattern or practice, as required by the Act; and (4) that injunctive relief would violate § 703(j) of the Act, 42 U.S.C. 2000e-2, which prohibits preferential treatment.
In their separate motion to dismiss, the Laborers have urged that, in addition to the grounds stated above, the first claim fails to allege any facts to warrant the conclusion that Laborers intended or acted to cause Hoel-Steffen to violate the provisions of its contract with the United States. The allegation that Laborers supported the Trades Council's policy statement does not support such a conclusion, since that statement expressly declares that no consideration of race was involved in the refusal to work on the project.
We have found it difficult to categorize or classify plaintiff's first claim. In one respect, the claim relates to racial discrimination. However, the legal theory invoked is simply tortious interference with contract, alleging that the defendants have acted to induce and force Hoel-Steffen to breach its contractual obligation with the United States. Several hurdles must be overcome for us to hear this claim. First, and foremost, is the fact that the defendants are all voluntary, unincorporated associations. Rule 17(b), F.R.C.P., provides in pertinent part:
"In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, *451 * * * may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, * * *."
Plaintiff has conceded that a labor union, being a voluntary, unincorporated association, does not have capacity to sue or be sued under Missouri law. However, plaintiff contends that its first claim asserts a substantive right existing under the laws of the United States, therefore, coming within the Rule 17(b) exception, because there is a federal common law right which can be invoked to attack interference with the nondiscrimination clause in government contracts. Plaintiff relies on Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); United States v. Standard Oil of California, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947); Romero v. International Term. Operating Co., 358 U.S. 354, 393, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); Wheeldin v. Wheeler, 373 U.S. 647, 663, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); and United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), among others, to support its proposition that the federal courts can resort to federal common law whenever necessary to deal with essentially federal matters that require uniform treatment. In the Standard Oil case, supra, speaking of the effect of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Court said:
"Conversely there was no purpose or effect for broadening state power over matters essentially of federal character or for determining whether issues are of that nature. The diversity jurisdiction had not created special problems of that sort. Accordingly the Erie decision, which related only to the law to be applied in exercise of that jurisdiction, had no effect, and was intended to have none, to bring within the governance of state law matters exclusively federal, because made so by constitutional or valid congressional command, or others so vitally affecting interests, powers and relations of the Federal Government as to require uniform national disposition rather than diversified state rulings. Cf. Clearfield Trust Co. v. United States, 318 U.S. at 366-368 [63 S.Ct. at pages 574-576, 87 L.Ed. 838]. Hence, although federal judicial power to deal with common-law problems was cut down in the realm of liability or its absence governable by state law, that power remained unimpaired for dealing independently, wherever necessary or appropriate, with essentially federal matters, even though Congress has not acted affirmatively about the specific question." (332 U.S. at 307, 67 S.Ct. at 1608)
However, a careful reading of all the cases in this field indicates that the courts have always been hesitant to fashion or call upon federal common law and have refused to do so unless a fairly urgent need was shown. See the majority opinions in Wheeldin v. Wheeler and Romero v. International Term. Operating Co., supra. The Court went on to refuse to create a federal common law remedy in the Standard Oil case saying:
"When Congress has thought it necessary to take steps to prevent interference with federal funds, property or relations, it has taken positive action to that end. We think it would have done so here, if that had been its desire. This it still may do, if or when it so wishes." (332 U.S. at 315, 316, 67 S.Ct. at 1612; footnote omitted.)
We note that plaintiff does not contend there is a federal common law right of action and remedy for all interferences with all government contracts. Instead, plaintiff attempts to show a need for a remedy in this case by reference to the comprehensive national program and policy to eradicate racial discrimination in employment. However, in its comprehensive dealing with the problem of racial discrimination, Congress has nowhere indicated that one of the necessary remedies should be a federal common law action for tortious interference with the "affirmative action" *452 and "nondiscrimination" covenants in government contracts. In fact, the original Bill (H.R. 7152) included a section (711(b)), which would have specifically authorized and indorsed the type of action which the President has taken in Executive Order 11246 regarding federal contracts. However, this provision was deleted from the Bill before passage. Because of the comprehensive scheme of actions and remedies which Congress has created to facilitate the eradication of this type of racial discrimination, we cannot find in this case the great need and urgency which would justify us in fashioning a federal common law remedy for tortious interference with contract. Accordingly, we hold that the defendants do not have capacity to be sued on the first claim.
Even if we were to find the first claim to be a proper federal common law cause of action and thus find the defendants amenable to suit thereon, we would still be faced with the difficulties posed by the jurisdiction of the NLRB. The tortious interference claim is much narrower in scope than the "pattern or practice" allegations of the second claim and relates directly, and is based on, the efforts of the defendants to have the E. Smith Plumbing Company taken off the Visitors Center project. This matter, in a different form, is presently pending before the NLRB. The racial discrimination question will no doubt be a central feature of those proceedings. The immediate situation has been stabilized by an injunction previously issued in this Court. Under these circumstances, we do not feel it would be proper for us to exercise jurisdiction until after the NLRB has acted. In making this determination, we emphasize that we are not passing on the question whether our jurisdiction is pre-empted by the Labor Board's jurisdiction.
Because of our disposition of the above issues, we do not find it necessary to reach the other grounds urged in support of the motions to dismiss the first claim. An order will be entered sustaining defendants' motions to dismiss the first claim.
Turning now to plaintiff's second claim, we think it obvious that this complaint is not defective for failure to state a claim upon which relief can be granted. A complaint will be dismissed on this ground only where it is certain that plaintiff can prove no facts in support of its claim which would entitle it to relief. As we point out below, plaintiff's complaint clearly states a claim under the Civil Rights Act of 1964. We cannot say with certainty that plaintiff will be unable to prove facts in support of this claim.
Equally unavailing is the contention that the Court lacks jurisdiction because the complaint fails to allege that the Attorney General had reasonable cause to believe that defendants are engaged in a "pattern or practice of resistance to the full enjoyment of * * *" the rights secured by the Act and because the complaint fails to set forth "facts pertaining to such pattern or practice." Section 707(a) of the Act, 42 U.S.C. § 2000e-6(a), provides:
"(a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this sub-chapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described." *453 This section sets forth what the complaint must allege, and nowhere does it indicate that the Attorney General is required to plead reasonable cause. His signature is in effect a certification of such reasonable cause. Absent proof to the contrary, there is a presumption that public officials act in accordance with legislative directions. Goldberg v. Truck Drivers Local Union No. 299, 293 F.2d 807 (6 Cir. 1961). The statute does not contemplate that the courts shall make a preliminary determination of the Attorney General's finding of reasonable cause. Rather, the Court's function is to determine whether the defendants have, in fact, engaged in such a "pattern or practice", and to do so as expeditiously as possible. Concerning the required allegation of facts, we find nothing in the language of the statute to indicate an intention to alter established rules of pleading. The prime requirement is still notice, and the present complaint is more than adequate in this regard. Established courses of discovery are available to allow the defendants to determine the precise details of the alleged "pattern or practice".
Also lacking merit is the contention that the relief requested would violate § 703(j) of the Act, 42 U.S.C. § 2000e-2, which prohibits preferential treatment. The relief requested would do no more than eliminate discrimination. If we were to accept defendants' interpretation of preferential treatment, the enforcement provisions of the Act would become a nullity.
Also unavailing is the contention that there is no basis or statutory authority for a "pattern or practice" suit because there is no allegation of any complaints or charges filed with either the Equal Employment Opportunity Commission or the Missouri Commission of Human Rights. While such information may be relevant to the issues at trial, it is not required in the pleading. Section 707 gives the Attorney General the authority to bring this suit, and this Court authority to decide the case, and does not impose a requirement that administrative charges are a prerequisite.
Defendants' final contention is that the injunctive relief requested under the second claim is subject to, and prohibited by, the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115. The Norris-LaGuardia Act deals with the issuance of injunctions in cases involving or growing out of labor disputes. The definition of "labor dispute" set out in 29 U.S.C. § 113 encompasses the activity and conduct out of which the second claim arises. However, the declaration of public policy in 29 U.S.C. § 102 clearly reveals the evil at which this statute aimed and the goals it intended to accomplish. The courts have never had any difficulty finding the Norris-LaGuardia prohibitions inapplicable when their application would not further the purpose set out in § 102, but instead would conflict with the obvious policy and plans of action contemplated by later statutes. In such cases, the policy expressed in the later statutes is held to override the Norris-LaGuardia Act. This has been seen most vividly in cases arising under the Railway Labor Act; see Brotherhood of Railroad Trainmen v. Chicago R. & I. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); and Brotherhood of Locomotive Engineers v. Missouri-K.-T. R. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960).
We think it is patently obvious that the purposes and policies of Title VII of the Civil Rights Act would be defeated by the application of the Norris-LaGuardia prohibitions to suits brought to enforce the rights secured thereby. Defendants point out that an express provision is included in § 706(h) to make Norris-LaGuardia inapplicable to suits brought under that section. It is argued that Congress would have included a similar provision in § 707 if it had intended to exempt suits by the Attorney General from Norris-LaGuardia. This argument fails to consider the manner by which § 707 came to be included in the Bill. The original Bill, H.R. 7152, as introduced in the House, did not provide for suits by the Attorney General. *454 The enforcement provisions of that Bill were primarily contained in its section 707. That section provided for civil suits to be brought by the Equal Employment Opportunity Commission. The exemption from the Norris-LaGuardia Act, contained in its § 707(g), applied to all of the enforcement procedures established. The Senate proposal involved a more strenuous enforcement procedure, and the legislative history reveals that many Senators were concerned with the delays that might inhere in the enforcement methods adopted by the House. Accordingly, the Dirksen-Mansfield substitute, which was presented on May 26, 1964, deleted the provision allowing the Commission to institute civil suits, and provided instead for suits by the Attorney General. Several versions of the amended Title VII were considered in the Senate. In some of these, the provision for suits by the Attorney General was included in the general enforcement section; in others, this provision was set forth in a separate section. It appears from the legislative history that the choice of location and section numbers was quite fortuitous, a matter quite understandable in view of the flurry of amendments that continued throughout the consideration of the bill. One thing is clear from the history; the intention was to exempt the equal employment opportunity enforcement provisions from the prohibitions of the Norris-LaGuardia Act. We cannot presume that Congress intended a vain act. Section 707 of the Act was included to allow quick and expeditious attack on the more flagrant cases of racial discrimination in employment opportunity. Proceedings under § 707 will be a sham absent the availability of injunctive relief. Accordingly, we find that the Norris-LaGuardia Act is not applicable to suits brought under § 707 of the Civil Rights Act of 1964, 42 U.S.C. 2000e-6.
Defendants' motions to dismiss the second claim will be denied.
Defendants' motions for a more definite statement will also be denied. The complaint clearly advises the defendants of the nature and basic outline of the charges. They have available a large arsenal of discovery tools to secure other details and information which will be required for trial. The motion for more definite statement is properly allowed only when the defendant cannot frame a responsive pleading on the basis of the information available from the complaint. The present complaint is not subject to such a defect.