**STATE OF WASHINGTON et al., Plaintiffs,**

**v.**

**BAUGH CONSTRUCTION CO., a corporation, et al., Defendants.**

**PORT OF SEATTLE, a municipal corporation, Plaintiff,**

**v.**

**RUSSELL G. NELSON CONSTRUCTION CO., a corporation, et al., Defendants.**

**Civ. A. Nos. 8552, 8566.**

United States District Court, W. D. Washington, N. D.

Oct. 10, 1969.

As Amended Nov. 7, 1969.

**600**

Slade Gorton, Atty. Gen., State of Washington, James B. Wilson, Chief, John Lackland and C. Kenneth Grosse, Asst. Attys. Gen. for plaintiffs in No. 8552.

J. Tyler Hull and Dustin C. McCreary, Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for plaintiff in No. 8566.

Hugh Hafer, Bassett, Donaldson & Hafer, J. Duane Vance, Vance, Davies, Roberts & Bettis, and Lembhard G. Howell, Miller, Howell & Watson, Seattle, Wash., for defendants in Nos. 8552 and 8566, also attorney for individual plaintiff in both cases.

LINDBERG, Chief Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter having duly come on pursuant to Order to Show Cause at 10:30 a. m. on Wednesday, October 8, 1969, Cause Nos. 8552 and 8566 having heretofore been consolidated by order of the Court on October 1, 1969, and plaintiffs State of Washington, Board of Regents, University of Washington, Board of Trustees, Community College District No. 6, a/k/a Seattle Community College, appearing by Slade Gorton, Attorney General, State of Washington, by James B. Wilson, Chief, John Lackland and C. Kenneth Grosse, Assistant Attorneys General, plaintiff Port of Seattle appearing by J. Tyler Hull and Dustin C. McCreary of Bogle, Gates, Dobrin, Wakefield & Long, defendants Asbestos Workers Local 7, Bricklayers Union No. 2, Carpet, Linoleum & Soft Tile Layers Local Union 1238, Elevator Constructors Local 19, Glaziers and Glassworkers

Local 188, International Brotherhood of Electrical Workers Local 77, International Brotherhood of Electrical Workers Local 46, Ironworkers Local 86, Lathers Union Local 104, Operating and Stationary Engineers Local 286, Plasterers Union Local 77, Plumbers and Pipefitters Local 32, Roofers and Waterproofers Local 54, Sheet Metal Workers Local 99, and Sprinkler Fitters and Apprentices Local 699, appearing by Hugh Hafer of Bassett, Donaldson & Hafer, defendant Operating Engineers Local 302 appearing by J. Duane Vance of Vance, Davies, Roberts & Bettis, and defendants Central Contractors Association, Tyree Scott, Ben McAdoo, and Jim Takisaki, officers and/or directors of Central Contractors Association, and as individuals, appearing by Lembhard G. Howell of Miller, Howell & Watson, and Operating Engineers Local 612, Painters Local No. 300, and Pile Drivers, Bridge, Dock & Wharf Carpenters, Millwrights & Drivers Local 2396, being unrepresented, and each of said defendants named above having been duly served by the United States Marshal with the Order to Show Cause in this matter, and

The Court having continued hearing on the Order to Show Cause from Friday, October 3, 1969, at 9:30 a. m., to Tuesday, October 7, 1969, at 9:30 a. m., and again to Wednesday, October 8, 1969, at 10:30 a. m., and

The Court having granted plaintiffs' motions for leave to file their Supplemental and Amended Complaints for Interlocutory Injunction and Permanent Injunction which complaints were duly filed herein and served upon defendants, and

The Court having granted the motion of Joe Fox et al., appearing by Lembhard G. Howell of Miller, Howell & Watson, to intervene as party plaintiffs in Actions No. 8552 and 8566, and

The Court having granted the motion of Dravo Corporation, appearing by Seth W. Morrison and Richard M. Stanislaw of Allen, DeGarmo & Leedy, to appear as plaintiff against all parties, and

The Court having considered the files, pleadings and affidavits filed herein, the arguments of counsel and briefs filed by the parties, the transcript of proceedings in Cause No. 8533 (heard by this Court on September 24, September 25 and September 29) which was by stipulation of the parties made a part of the record in this case, and the testimony and exhibits presented upon the hearing on October 8, 1969, in these causes, and being fully advised in the premises, does hereby make the following

## FINDINGS OF FACT

1. The suit of State of Washington et al. v. Baugh Construction Co. et al., No. 8552, was consolidated with the suit of Port of Seattle v. Russell G. Nelson Construction Co. et al., No. 8566, on October 1, 1969.

2. The plaintiffs in No. 8552 are:

(a) the State of Washington,

(b) the Board of Regents of the University of Washington, hereinafter referred to as Plaintiff University,

(c) the Board of Trustees, Community College District No. 6, a/k/a Seattle Community College, hereinafter referred to as Plaintiff College.

Said Boards are agencies of the State of Washington, and by law have full control over the property known as the University of Washington and Seattle Community College, respectively.

3. The plaintiff in No. 8566 is the Port of Seattle, hereinafter referred to as Plaintiff Port, a municipal corporation which owns and operates the Seattle-Tacoma International Airport.

a. On October 9, 1969 the Court, having determined that the intervention of Joe Fox, et al. as party plaintiffs would not unduly prejudice any present parties of consolidated Civil Nos. 8552–8566, granted petitioners' motion to intervene. These plaintiffs are minority trainees who were employed commencing October 6, at construction sites at the University of Washington, Seattle Community College and Seattle-Tacoma International Airport.

b. Intervenor Dravo Corporation is a corporation doing business in the State of Washington as a construction contractor and was one of the contractors ordered shut down by Plaintiff Port on September 24, 1969.

4. Several parties are defendants in both suits:

Bricklayers Union No. 2; Carpet, Linoleum & Soft Tile Layers Local 1238; Glaziers and Glassworkers Local 188; International Brotherhood of Electrical Workers Local 46; Operating Engineers Local 302 Hoisting & Portable; Operating and Stationary Engineers Local 286; Plasterers' Union Local 77; Plumbers and Pipefitters Local 32; Roofers and Waterproofers Local 54; Sheet Metal Workers Local Union 99; Ironworkers Local 86, the Central Contractors Association, and their officers, agents, members, employees, servants, followers, affiliates and successors, and all other persons acting in active concert or participation with such persons.

The following parties are defendants only in the State of Washington suit:

Asbestos Workers Local 7; Elevators Constructors Local 19; Lathers Union Local 104; Painters' District Council No. 5; and Sprinkler Fitters & Apprentices Local Union 699.

The following parties are defendants only in the Port of Seattle suit:

International Brotherhood of Electrical Workers Local 77; Operating Engineers Local 612; Painters Local No. 300; Tyree Scott, Ben McAdoo and Jim Takisaki, officers and/or directors of Central Contractors Association, and Tyree Scott as an individual.

5. Defendant Central Contractors Association, hereinafter called "Defendant Association," is a nonprofit Washington corporation organized to involve inner city contractors and craftsmen in more construction jobs. Defendants Tyree Scott, Ben McAdoo and Jim Takisaki are officers of Defendant Association. The other defendants, hereinafter

called "Defendant Unions," are labor organizations representing employees engaged in the construction industry, an industry affecting commerce. Plaintiffs do not have any collective bargaining agreements with Defendant Unions covering matters material to this action.

6. Plaintiff University has contracted for the construction of numerous projects valued in the aggregate at $38,000,000. Many of said projects are partially financed by federal funds.

7. Plaintiff College has contracted for the construction of certain projects valued in the aggregate at approximately $19,000,000, and partially financed by federal funds.

8. Plaintiff Port owns and operates the Seattle-Tacoma International Airport, hereinafter called "Airport," which is part of a national system of airports, is used continuously for arrival and departure of aircraft in interstate and foreign commerce, and is subject to regulatory control by virtue of agreements between Plaintiff Port and the United States and under federal statutes relating to airports. Under its contract and commitments with the federal government, Plaintiff Port is obligated to maintain the Airport in a safe and serviceable condition. Plaintiff Port currently has twelve different construction projects being performed by ten different contractors at the Airport, the dollar amounts of which aggregate approximately $18,000,000. Two of said contracts are being financed in substantial amounts by federal funds.

9. All the construction contracts involved in this case carry provisions prohibiting discrimination against any employee or applicant for employment because of race, creed, color or national origin in compliance with state and federal laws, and all of said contracts partially financed by federal funds are required to comply with Federal Executive Order No. 11246 of September 24, 1965, 30 F.R. 12319 and the regulations promulgated thereunder. Plaintiffs University, College and Port are obli-

gated under Executive Order No. 11246 to assist and cooperate actively in obtaining compliance with these contract provisions.

According to the evidence, there appears to be a disproportionately low ratio of employees of minority origin actually employed on construction sites in certain crafts represented by some Defendant Unions.

10. Defendant Association and persons acting in concert with it allege that the contractors and Defendant Unions have failed and/or refused to comply with said provisions of the contracts and with the regulations promulgated thereunder and, further, that failure on the part of Plaintiffs University, College and Port to proscribe such noncompliance constitutes a violation of the rights of minority individuals to equal rights under law guaranteed by 42 U.S.C. § 1981. They have demanded that all construction projects of plaintiffs be shut down until a substantial number of black trainees are employed on all of said construction projects.

11. On Tuesday, September 23, 1969, representatives of the Defendant Association demanded of certain contractors on the construction sites of Plaintiff University that they shut their jobs down until demands for jobs were met. When all of the contractors did not shut down, certain persons demonstrating with Defendant Association damaged equipment on the job site.

Several contractors requested that they be authorized to shut their jobs down. In response thereto the University gave the following statement on the evening of September 23, 1969 to all contractors on the University projects:

"Certain contractors have requested authority to shut down their jobs on the University Campus during the present conflict between the Central Contractors Association and the construction industry. The University concurs that life and limb may be in jeopardy under the present circumstances and authorizes any or all con-

tractors on the University Campus to close their jobs down at their discretion.

> E. M. Conrad
> Vice President for Business and Finance
> University of Washington"

12. On Wednesday, September 24, 1969, a large number of individuals, including representatives of Defendant Association, assembled on the street across from the campus of Plaintiff University and adjacent to one of Plaintiff University's largest construction projects. To prevent an imminent physical confrontation between these individuals, the police, and workmen on the job, Charles E. Odegaard, President of Plaintiff University, ordered all construction shut down.

13. On September 24, 1969, a demonstration by approximately 200 persons, led by Defendant Association and Defendant Tyree Scott, occurred at the Airport in an effort to obtain more jobs in the construction industry for workers from minority groups. On that date said persons formed a line on the rampway and ramp at the Airport, both off-limits areas, preventing ingress to and egress from certain scheduled aircraft and requiring the presence of many law enforcement officers. Because of the apparent hazard to life and property resulting from the presence and pressure exerted by the demonstrators, Plaintiff Port ordered all construction jobs in progress for it closed down.

14. Plaintiffs University, College and Port, several contractors and defendants have met with the Governor of the State of Washington and representatives of various state and federal administrative agencies (including the United States Department of Labor, the United States Department of Justice, the Equal Employment Opportunity Commission, the Department of Health, Education and Welfare, the Department of Labor and Industries of the State of Washington, and the Washington State Board Against Discrimination) in an attempt to insure full compliance with equal opportunity laws. Many of these negotiations centered around proposed procedures for on-the-job training of minority persons, but to date Defendant Unions have refused and are continuing to refuse to agree to proposed programs involving on-the-job training.

15. On October 3, 1969, Plaintiffs University, College and Port notified certain of their contractors by telegram that they felt that contractors were not in compliance with Federal and State laws and regulations and contractual provisions regarding equal employment. They directed the contractors to employ at their construction sites, as an interim measure, a specified number of trainees from minority groups in skilled craft jobs (a total of 50 trainees among all of the contractors). They ordered the contractor to comply with the directive immediately and to "reopen your job as soon as possible under these conditions." They ordered that the costs of employing these trainees was to be borne by the contractors, not plaintiffs. Plaintiffs stated that failure to comply with the directives would be grounds for termination or default.

These directives unilaterally implemented a proposed agreement which plaintiffs, many contractors, and the Central Contractors Association had agreed to earlier. The labor unions, however, who had been present during the earlier negotiations, had not agreed.

16. Pursuant to the directives of plaintiffs, some contractors hired trainees from minority groups and commenced reopening their projects on October 6, 1969. Approximately 20 minority trainees have been hired at the University of Washington sites; approximately 12 trainees have been hired at the Airport sites; approximately 10 trainees have been hired at the College sites.

17. Commencing Tuesday, October 7, 1969, certain of Defendant Unions' members left their jobs as a result of the appearance of trainees on some projects. As a result of these walkoffs, progress on these projects has been sig-

nificantly slowed or completely stopped. There is no evidence that these workers will voluntarily return to the job sites as long as minority trainees are employed there.

18. Contracts between the International Brotherhood of Electrical Workers Local 46, Operating Engineers Local 302, Plumbers and Pipefitters Local 32, and various contractors at the sites contain no-strike, no-lockout provisions and arbitration procedures for the resolution of disputes. There is no provision in such contracts for union-sanctioned strikes, withholding of referral of journeymen or other economic action in the event of a violation of such labor agreements, assuming there has been such a violation. Other contracts in evidence contain similar provisions.

19. There is evidence that employees represented by certain Defendant Unions left their jobs when trainees appeared on the job site. Some trainees, when they went to Local 302, were given or had filled out "registration for employment" forms, but in none of these was any preference for employment group set out.

20. Plaintiffs University, College and Port, while demonstrating some concern that sufficient steps had not been taken to achieve compliance with equal employment opportunity provisions, and having incorporated in their construction contracts provisions specified by applicable laws, regulations, executive orders, and governmental agencies, appear not to have taken adequate affirmative action prior to the execution of the contracts to assure that their contractors took the necessary steps to achieve compliance with state and federal laws and contract provisions regarding equal employment opportunities.

On their part, the contractors on the jobs involved in this case and Defendant Unions appear not to have taken adequate steps to reconcile their hiring arrangements with the increasing demands of state and federal agencies and owners' contractual requirements aimed at increasing minority participation and equal employment opportunities in the building construction industry.

21. Defendant Unions contend that the employment of the minority trainees directly by the contractors at the job site or at the contractors' offices would be contrary to the hiring hall provisions and apprenticeship programs of the contracts between certain of the Defendant Unions and the contractors.

22. Defendant Unions contend that the plaintiffs' directions to contractors on the various jobs by way of telegram on October 3, 1969, would tend to have the effect of encouraging, demanding and coercing the contractors into taking action violative of their existing collective bargaining agreements with the various Defendant Unions, and contrary to certain Unions' apprenticeship programs.

23. The Seattle Building Trades Council and its affiliated local unions have adopted and the United States Department of Labor has approved an "Outreach Program" and funding for such program has been approved by the Department of Labor. If successful, these programs may hold promise for the future, but they are inadequate by themselves to afford the interlocutory relief required by the facts presented in this case.

24. The Central Contractors Association and others working in concert with it, although seeking enforcement of equal opportunity provisions in good faith, have nevertheless through their demonstrations during the past six to eight weeks provided the occasion for destruction of property and injury to persons.

25. Continued closure of the construction projects will materially and substantially interfere with the primary responsibility of Plaintiff University and Plaintiff College to insure the opportunity of all members of their communities to obtain their educational objectives and with the responsibility of Plaintiff Port to fulfill its obligations to operate and maintain the Airport in a safe and serviceable condition. The cur-

rent situation cannot be allowed to continue. Irreparable damage is occurring, including serious delay in construction of much needed public buildings and facilities, substantial loss of wages, impairment of contractual rights, possible loss of government financing, and danger of civil strife.

Upon the foregoing Findings of Fact the Court makes the following

## CONCLUSIONS OF LAW

1. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(4) and 42 U.S.C. §§ 1981, 1983, 2000e *et seq.*

▇ 2. Since there is no evidence that members of Boilermakers Local 104 were employed on the affected job sites during the period which this litigation involves, said defendant shall be dismissed.

▇ 3. Title VII of the Civil Rights Act of 1964 does not supersede the right to contract for one's labor which is assured by 42 U.S.C. § 1981. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Any administrative procedures that may be prerequisite to bringing a Title VII action in the Federal District Courts are inapplicable to suits such as this one, characterized by the facts as herein found by this Court, when instituted by proper parties under 42 U.S.C. § 1981. *Id.* Intervening plaintiff trainees clearly have the requisite interest in the outcome of this litigation to qualify as such proper parties.

▇▇ 4. Under the usual situation, the Equal Employment Opportunities Commission must be given an opportunity to resolve Title VII disputes through efforts to obtain "voluntary compliance" before Court action is proper. Brown v. Gaston County Dyeing Machine Co., 405 F.2d 887 (4th Cir. 1968), cert. denied, Observer Transp. Co. v. Lee, 394 U.S. 918, 89 S.Ct. 1192, 22 L.Ed.2d 451 (1969); Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968). Such procedure would appear frivolous when all previous attempts to achieve such compliance, including informal but serious attempts by the Equal Employment Opportunities Commission, have failed to resolve any of the major issues. See International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. National Mediation Board, 314 F.Supp. 229 (D.C.1969). The futility of pursuing administrative procedures is especially glaring in view of the fact that, at least since September 17, 1969, the Equal Employment Opportunities Commission has had a full opportunity to deal with identical issues, involving many of the parties appearing in this action, under formal charges brought before that administrative agency by the plaintiffs in the case of Central Contractors Association, et al. v. Local Union Number 46 heard recently by this Court. *Cf.* Madlock v. Sardis Luggage Co., 302 F.Supp. 866 (D.C. 1969). Therefore the Court also has jurisdiction under Title VII of the Civil Rights Act of 1964.

▇ 5. This is not a "labor dispute" within the meaning of the anti-injunction provisions of the Norris-LaGuardia Act (29 U.S.C. § 107) because it is bottomed upon alleged acts of discrimination which are prohibited by federal law and which transcend the collective bargaining rights which arise out of the labor contracts of defendant unions. Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937); Graham v. Brotherhood of Locomotive Firemen & Enginemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22 (1949); Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 774, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 458, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); United States v. Local 189, United Papermakers & Paperworkers, 282 F.Supp. 39 (E.D.La.1968); United States v. Building and Construction Trades Council of St. Louis, 271 F.Supp. 447, 453 (E.D.Missouri, 1966); see Vaca v. Sipes, 368 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

■ 6. The actions of Plaintiffs University, College and Port in requiring the employment by their contractors of minority groups onto the construction need not result in the "imposition" of a "quota system" contrary to the Civil Rights Act of 1964 and 29 C.F.R. § 30.-15. See, e. g., Opinion of the Attorney General regarding the validity of the "Philadelphia Plan." 38 U.S.L.W. 2191 (Sept. 30, 1969).

■ 7. The plaintiffs have made a sufficient showing of a violation of their rights and irreparable injury flowing therefrom to entitle them to the interlocutory relief hereinafter provided.

### ORDER

Upon the foregoing Findings of Fact and Conclusions of Law a preliminary injunction shall be entered as follows:

1. The defendants are enjoined and restrained from discriminating against members of minority races in violation of the provisions of 42 U.S.C. §§ 1981, 2000e *et seq.* and that in the implementation of this Order, the following shall apply:

a. Any complaint of unlawful discrimination arising out of work registration, work referrals or referral registration lists shall be heard, decided and any appropriate action thereon taken within three days of the date of the complaint by the Joint Hiring Committee, if any, established under the applicable collective bargaining agreement, subject to review and report to the Court by the impartial referee appointed below. In case no such Joint Hiring Committee has been established, such complaints shall be heard in the first instance by the referee. In either case, the powers of the referee shall be as stated below.

b. Subject only to the preceding paragraph, Sidney C. Volinn is hereby appointed as an impartial referee to hear any complaints or disputes regarding compliance with any of the provisions of this Order and report to the Court. The referee is not authorized to alter the terms of any existing state or federally approved apprenticeship plan or any collective bargaining agreement or construction contract. The costs, fees and expenses of the referee shall be borne as directed by the Court.

c. All minority applicants shall be entitled to be represented at any and all hiring hall or apprenticeship proceedings by persons of their choosing to assist them in their efforts to qualify for dispatch or apprenticeship. Provided, however, that such applicants shall not be entitled to assistance during the administering of apprenticeship tests or examinations.

d. The Defendant Unions shall proceed forthwith and with all possible speed to complete all aspects of the Outreach Program to qualify minority applicants who do not otherwise qualify for apprenticeship or dispatch. The progress of this program shall be reported to the Court as set out by the Order in Central Contractors Association, et al. v. Local Union No. 46, et al., Case No. 8533 in the above entitled Court.

2. That Defendant Unions be ordered to cease and desist from all work stoppages at the University of Washington, Seattle Community College and Seattle-Tacoma International Airport job sites. Said Unions are also

a. To dispatch men as required to contractors and their subcontractors who are or will be performing construction projects for Plaintiffs;

b. To advise, through their officers and agents, including any person authorized to speak for them, any member of Defendant Unions

upon direct or indirect inquiry that the Union has no objection to union members working upon the jobs involved herein because of the employment of any trainee hired by a contractor pending further order of this Court;

c. To dispatch or otherwise issue approval in usual form to the employment of any such minority employees where there is provision for exclusive hiring between the contractor and the Union under the Collective Bargaining Labor Agreement involved, reserving to the Unions their right to contest the right of the owners to direct such employment of minority employees in further proceedings in this cause and reserving their right to have reviewed, but not withhold dispatch concerning the number and classification of minority trainee employees on any particular project in each instance.

3. Any contractors who have already hired black trainees (whose names are to be attached hereto as Exhibit No. 1) onto their jobs may, at their option, retain said trainees. The Court intimates no opinion at this time as to whether retention or failure to retain said trainees would constitute or fail to constitute compliance with state and federal statutes and contract provisions. The Court likewise intimates no opinion as to which party may be ultimately responsible for the costs incurred in the employment of these trainees.

No trainees in addition to those already hired, however, shall be hired onto jobs at the construction sites; nor need Defendant Unions dispatch or otherwise issue approval of persons other than those trainees already hired onto the jobs (see paragraph 3 above and provision 2 (c) above).

■ Contractors shall not dismiss union workers or otherwise reduce the size of their union work crews because of the presence and availability of black trainee workers.

4. That pending the final determination of this action all Defendants, their agents and representatives and persons acting in concert with them are enjoined from physically assaulting or threatening to use any physical force against persons in connection with disputes over minority representation on construction job sites within the jurisdiction of the Court.

## AMENDMENT TO PRELIMINARY INJUNCTION

This matter having duly come on pursuant to motion for amendment to the Preliminary Injunction, heretofore entered herein, by the Port of Seattle, plaintiff in Civil Action No. 8566, acting through its attorneys, Bogle, Gates, Dobrin, Wakefield & Long, J. Tyler Hull and Dustin C. McCreary, and good cause having been shown therefor by the Affidavits of Harold W. Booth, William D. Robertson, Richard D. Ford, and A. Dean Barker, filed herein on November 7, 1969, in support thereof, which Affidavits establish that mass demonstrations, some violence, threats of violence, and substantial physical interference with the traveling public and normal Airport operations occurred at the Seattle-Tacoma International Airport between 10:00 a. m. and 3:00 p. m. on November 6, 1969, during demonstrations organized and conducted by the Central Contractors Association and Tyree Scott, defendants in this action, and others acting in concert with them, and it appearing that additional threats of violence and interference with Airport operations, operations of the plaintiffs, and other public operations, have been made by representatives of said defendants, now, therefore, it is

Ordered that:

Paragraph numbered 4 of the Preliminary Injunction entered in these causes on October 10, 1969, is hereby amended to read as follows:

■ 4. That pending final determination of this action all Defendants, their agents and representatives and persons acting in concert with them are en-

joined from any of the following activities in connection with disputes over minority representation on construction sites within the jurisdiction of the Court: (a) physical assault, interference, or impediment, threats to use any physical force, interference or impediment, or undertaking demonstrations in such numbers so as to give reasonable cause for apprehension of physical force, interference or impediment, against persons or property; and (b) undertaking to organize demonstrations which would tend to cause the acts prohibited by this order; and (c) entering or seeking to enter any areas where the general public is prohibited from entering by virtue of established regulations; and (d) interfering with the normal work and activities at construction sites; and (e) interfering with the flow of vehicular or pedestrian traffic or with ingress to or egress from public buildings or facilities or with the operations being conducted therein.