**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNA-MENTAL IRON WORKERS, LOCAL NO. 1, Defendant-Appellee.**

**No. 17879.**

United States Court of Appeals,
Seventh Circuit.

Jan. 27, 1971.

Rehearing Denied March 16, 1971.

Arthur D. Wolf, Atty., Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., William J. Bauer, U. S. Atty., Chicago, Ill., for plaintiff-appellant.

Solomon I. Hirsh, Chicago, Ill., for defendant-appellee.

Before DUFFY, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

This action was brought by the United States Attorney General by virtue of Section 707(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–6,[1] alleging that defendant Association[2] discriminated against Negroes in its membership, employment, and recruiting practices. Injunctive relief was sought to restrain future discrimination and to dispel the effects of past discrimination.

The Association answered, *inter alia,* that the Attorney General did not have "reasonable cause to believe" that the Association "is engaged in the alleged discrimination." The Association then moved to strike certain parts of the complaint with respect to the union's recruitment policy. The motion was granted.

The government moved for production of certain documents relating to practices of the Association prior to July 2, 1965, and served interrogatories on the Association pertaining to certain pre-1965 practices and to nepotistic practices of the Association. The district court refused to grant this discovery.

The Association thereafter moved to dismiss with prejudice on the interrelated grounds that the government refused to produce documents sought by the Association in support of its "no reasonable cause" defense and that it had failed to show that the Attorney General had reasonable grounds to bring the suit. The district court granted the motion and entered judgment, and the government has appealed. We reverse and remand.

I.

Section 707(a) provides that upon a reasonable cause belief the Attorney General may file a "complaint * * * signed by him" setting forth facts pertaining to the alleged discrimination in employment practices and seeking appropriate relief. We think the plain words of the statute disclose that the district court erred in its view that a defendant

1. § 2000e–6. Civil actions by the Attorney General—Complaint

(a), Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

2. International Association of Bridge, Structural and Ornamental Iron Workers, Local No. 1.

may have a pre-trial inquiry into the factual basis of the Attorney General's "reasonable cause" belief.

Federal courts have consistently held that the Attorney General need not plead his "reasonable cause to believe" that discrimination exists. United States v. Building & Const. Tr. Coun. of St. Louis, Mo., 271 F.Supp. 447, 452 (E.D.Mo.1966); United States by Clark v. IBEW Local 683, 270 F.Supp. 233, 235 (S.D.Ohio 1967). Other district courts have denied motions for interrogatories aimed at discovery of the factual basis for determination of the Attorney General's reasonable cause belief. United States v. IBEW Local 309, Civil No. 69–10 (E.D.Ill. filed July 2, 1969); United States v. Building & Const. Tr. Coun. of St. Louis, Mo., *supra*.

■ In United States Building & Const. Tr. Coun., the court stated:

> The statute does not contemplate that the courts shall make a preliminary determination of the Attorney General's finding of reasonable cause. Rather, the Court's function is to determine whether the defendants have, in fact, engaged in such a "pattern or practice" [of racial discrimination], and to do so as expeditiously as possible. 271 F.Supp. at 453.

We agree with this construction of the statute. The purpose of Section 707(a) is to authorize the Attorney General to bring a federal suit where a "pattern or practice"—rather than a single, isolated act—of racial discrimination is present in an employment practice. The only issue for the court, therefore, is whether there has been a violation of the statute and not whether the Attorney General had reasonable cause to believe there was a violation. United States v. IBEW Local 309, *supra*.[3]

■ A sufficient complaint, by its substantial allegations with respect to the existence of a "pattern or practice" of discrimination, will clearly demonstrate the basis of the Attorney General's "reasonable cause to believe." United States v. Gustin-Bacon Div. Certainteed Prod., 426 F.2d 539 (10th Cir. 1970). And, under the provisions of Rule 11, Federal Rules of Civil Procedure, a signature on such complaint constitutes a certification that there is "good ground to support" the allegations that a pattern or practice of racial discrimination exists. United States v. IBEW Local 683, *supra*.

We think that this view that the government is not required to plead or litigate the reasonable cause belief is consistent with the provisions of Section 707(b) for expeditious treatment of Section 707(a) suits. As pointed out by the Tenth Circuit in *Gustin-Bacon*, the provision in sub-section (b) that " '[i]t shall be the duty of the judge designated pursuant to this section to assign the case for hearing at the earliest practicable date *and to cause the case to be in every way expedited*' * * * makes it abundantly clear that these controversies are of great urgency and must be disposed of promptly." 426 F.2d at 543. And the paragraph immediately preceding that quoted part of Section 707(b) provides that "[i]t shall be the duty of the chief judge of the district * * * in which the case is pending *immediately* to designate a judge in such district to hear and determine the case." (Emphasis added.) Also, if no district judge is available and that fact is certified to the chief judge of the circuit, he shall designate a "district or circuit judge of the circuit" to hear the case. We think 707(b) is pregnant with an urgency that is incompatible with liti-

---

3. The legislative history of Section 707 supports the view that the Attorney General's "reasonable cause" belief is not a litigable issue. For example, Congressman Celler, the floor manager in the House, stated: "Finally, the statute contains the usual directive to the Attorney General that he should have reasonable cause before he sues, but of course, he—not the court—decides whether reasonable cause exists, and the issue of reasonable cause does not present a separate litigable issue." 110 Cong.Rec. 15895 (1964).

gating the Attorney General's reasonable cause belief.

We hold that the district court erred in sustaining defendant's interrogatories and subpoena duces tecum with respect to determining whether the Attorney General had "reasonable cause" for belief in what he alleged. It follows that the court erred in dismissing the government's suit.

The Association contends that the discovery sought—and refused by the government—has a broader aim than the mere "reasonable cause" determination.[4] However, the record does not support this contention. At the hearing held on the Association's motion to produce the documents, the Association argued that the documents were needed because they would reveal if the Attorney General had any basis for his reasonable cause determination. The district court then denied the motion "without prejudice to the right of defendants to have such documents produced at trial." The Association thereafter served upon plaintiff's counsel a subpoena duces tecum returnable on the date of trial and covering the documents subject to the discovery motion. At a hearing on the government's later motion to modify the subpoena, both the court and the Association stated that the documents in question were relevant to the "reasonable cause" issue. On August 7, 1969 the court dismissed the suit, setting forth its reasons in a minute order of the same date. The order, in referring to the documents, described them as "the four documents upon which the Attorney General relied for reasonable cause in instituting this suit." The court then dismissed the action, apparently on the double grounds of "failure of the plaintiff to show that the Attorney General had reasonable grounds or cause to institute this action against defendant and further for the refusal of the plaintiff to produce four documents upon which the Attorney General relied for reasonable cause."

The district court apparently thought defendants had shown "good cause"[5] for discovery by its argument that the documents were necessary in order to determine if the Attorney General had "reasonable cause;" the court then ordered their production and dismissed the cause upon the government's refusal to produce.

The subpoena should be quashed in so far as it seeks documents for challenging the Attorney General's reasonable cause belief. Upon remand, the court shall determine if the defendant has shown the broader purpose which it asserted in this court. If the defendant makes a proper showing, the court may then examine the documents *in camera* at trial—as it had indicated it intended to do with respect to the reasonable cause issue—and determine if the documents in question are privileged and whether "good cause" has been shown for their production. In aid of the remand, we refer to Judge Cummings' opinion for the court in Natta v. Zletz, 418 F.2d 633 (7th Cir. 1969), as to the viability of the rule in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).[6]

4. The Association sought, *inter alia*, a written statement taken by the government from one person, and memoranda of interviews with seventeen others; four memoranda prepared by attorneys of the Civil Rights Division before this suit was initiated "summarizing available information concerning Local One and its Joint Apprenticeship Committee and making recommendations regarding actions to be taken;" and investigative reports prepared by government agents in the case.

5. See former Rule 34. Federal Rules of Civil Procedure.

6. The new Federal Rules of Civil Procedure relating to Depositions and Discovery have been promulgated since the district court's dismissal of this suit. Rule 26(b) (3) establishes guidelines for the discovery of trial preparation materials.

## II.

◼ The district court struck from the complaint a paragraph,[7] and the corresponding prayer for relief, alleging that the Association implemented its discriminatory policy and practices by discriminating against Negroes in recruiting members and by failing to take reasonable steps to eliminate present effects of previous discrimination. This ruling was erroneous. We think the allegations with respect to recruiting are relevant, and, if proven, constitute a violation of Section 703(c), 42 U.S.C. § 2000e–2(c), United States v. Plumbers Local 73, Civil No. 68–C–45 (S.D.Ind. filed Aug. 15, 1969), Dobbins v. Local 212, IBEW, 292 F.Supp. 413 (S.D.Ohio 1968); and accordingly should not have been struck. 2A Moore Federal Practice § 12.21. The allegation with respect to removing the *present effects* of past discrimination is likewise relevant since it is proper for a court to look at past discrimination to see whether an employer is perpetuating a pattern of discrimination through other means and, if so, require the defendant to remedy the present effects. Local 53, Int. Assn. of Heat & Frost Insulators & Asbestos Workers v. Vogler, 407 F.2d 1047 (5th Cir. 1969); United States v. Local 189, United Papermakers, 282 F.Supp. 39 (E.D.La.1968); Quarles v. Philip Morris, Inc., 279 F.Supp. 505 (E.D.Va.1968).

## III.

◼ The district court erred also in limiting the government's pre-trial dis-covery to the period after July 2, 1965, the effective date of the statute. In our view the past sheds light on the present as well as the future. Past discrimination, even if lawful, may be relevant to show motive and intent as to present practice or to establish a pattern or practice of discrimination or to show that present—seemingly innocent—practices are designed to perpetuate or have the effect of perpetuating a past policy of discrimination. Local 53, Int. Assn. of Heat & Frost Insulators and Asbestos Workers v. Vogler, *supra*; United States v. IBEW Local 309, Civil No. 69–10 (E.D.Ill. filed July 2, 1969); United States v. Building & Const. Tr. Coun. of St. Louis, Mo., 271 F.Supp. 454, 459 (E.D.Mo.1966).

◼ The court erred also in sustaining defendant's objection to plaintiff's interrogatories with respect to alleged nepotistic practices resulting in discrimination that excluded Negroes from Association membership. A union which has only white members can effectively preclude non-whites from membership by giving preference in admission to relatives of members. The court therefore erred in denying the discovery sought. Local 53 of Int. Assn. of Heat & Frost Insulators and Asbestos Workers v. Vogler, *supra*; United States v. Plumbers Local 73, *supra*.

For the reasons given, the judgment is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

---

7. The paragraph struck reads:
   8. The policy and practice referred to in the preceding paragraph has been implemented by Local No. 1, among other ways, as follows:
   (a) By failing and refusing to *recruit* and accept Negroes as members of the union upon the same basis as white persons are *recruited* and accepted.
   \*　　\*　　\*　　\*　　\*
   (c) *By failing and refusing to take reasonable steps to eliminate the effect of its previous policies and practices of discrimination on the basis of race.*