James N. KENNERLY, Plaintiff,

v.

ARO, INC., Defendant.

No. CIV-4-76-19.

United States District Court,
E. D. Tennessee,
Winchester Division.

Sept. 28, 1977.

Robert S. Peters, Swafford, Davis & Peters, Winchester, Tenn., for plaintiff.

William N. Ozier, Bass, Berry & Sims, Nashville, Tenn. and John L. Stephens, Co. Counsel, Arnold Air Force Station, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action by the plaintiff Mr. James N. Kennerly for damages (*i. e.*, back pay) and injunctive relief for the deprivation of his civil rights in the form of alleged racial discrimination by the defendant ARO, Inc. (ARO) in his employment. A bench trial was conducted by the Court on July 13–14, 1977. From the evidence adduced thereat and the entire record, the Court makes the following

## FINDINGS OF FACT.

1. The plaintiff is a black male person resident within this district. He applied to ARO for employment in September, 1963, was employed, and remained thus employed after February 13, 1964 until he became absent with leave (on July 18, 1977).

2. ARO is a Tennessee corporation which is engaged by contract in the operation and maintenance of the Arnold Air Engineering Development Center, a sophisticated wind-tunnel and testing facility related primarily to the aerospace industry, and maintains the pertinent records herein at Arnold Air Force Station, Tennessee, within this district, 42 U.S.C. § 2000e–5(f)(3).

3. The plaintiff's first job with ARO was in the classification of janitor-cleaner. He remained in this classification for approximately 6 months, cleaning a portion of ARO's premises. Thereafter, he was promoted by ARO to to the classification of laborer, in which capacity he has worked, and works, continuing to clean a portion of ARO's premises.

4. (a) Mr. Kennerly was and is a member of the Laborers' International Union of North America, which is one of 13 labor organizations comprising a collective bargaining unit which is represented by the Air Engineering Metal Trades Council (AEMTC).

(b) At all pertinent times since 1964, ARO maintained bargaining agreements with the AEMTC, governing the terms and conditions of employment of those employees in the bargaining unit represented by AEMTC.

5. Pursuant to the provisions of the aforementioned agreement, notice of all job vacancies in ARO's operation at such facility is posted for bidding by its employees. Those employees, who lodge with their supervisors bids for such vacancies must possess the minimum qualifications listed in the job description therefor for the vacant position before they will be considered by ARO to fill such vacancy. The initial determination as to whether such a bidder possesses such qualifications is made by the supervisor of ARO's compensation group in the personnel relations branch of its administrative services division.

6. (a) Such bidders, thus determined to be qualified, if not applying as trainees, are then referred for personal interview to the supervisor of that part of the ARO operation in which the unfilled position exists.

(b) Such bidders, thus determined to be qualified, if applying as trainees, are then referred to a joint training committee, which consists of two representatives of ARO and two representatives of the AEMTC. Selections for trainee-positions are made by such committee pursuant to a rating system adopted in May 1971.

7. (a) It was agreed by ARO and the AEMTC that promotions of ARO's employees would be made " * * * on the basis of the necessary qualifications to perform

the work [in the position to which the employee was to be promoted] and seniority. * * * " It was agreed also that, where the qualifications of the bidders were deemed equal, " * * * the senior employee [would be] given preference. * * * "

(b) ARO promoted employees on the basis of ratings of each bidder in accordance with a predetermined point system, the promotion being awarded to the bidder with the highest number of such points. No consideration was given in such selection to the relative seniority of the bidders by ARO unless two or more bidders were deemed equally qualified, in which event the senior employee of such bidders was given preference.

(c) Under the provisions of the aforementioned agreement of the parties, an unsuccessful bidder could file a grievance through the AEMTC over his or her failure of selection.

8. (a) On September 29, 1971, the Secretary of Labor ordered ARO within 30 days to

permit Negro employees in the * * * laborer job classification * who are on the payroll to compete for any job vacancy to be filled (including those vacancies to which employees would otherwise have recall or return rights) on the basis [sic: bases] of qualifications to perform the job and seniority. The qualifications of any Negro employee in the * * * laborer job classification * who bids shall be considered equal to the qualifications of other bidders if said employee is presently qualified or can be qualified for the job within a reasonable period of time (three months). * * *

(b) Personnel of ARO conducted personal interviews with all its black and other non-black female employees in 1971, in which there was opportunity for discussion of such employees' qualifications and any desire by them for higher classifications of employment.

(c) Such an interview was conducted with Mr. Kennerly on June 8, 1971.

(d) ARO instituted also at such facility a further joint-training program in the effort to provide by affirmative action equal opportunity for employment to black and non-black female bidders.

9. ARO segregated its black employees by classification in such a way that deprived, or tended to deprive, them of individual employment opportunities because of their race.

As of February 1, 1976:

(a) 29 of 40 janitor-cleaners of ARO were black;

(b) 2 of 2 of ARO's janitor-leadermen were black;

(c) 29 of 63 laborers of ARO were black;

(d) 2 of 2 of ARO's track-laborers were black;

(e) 0 of 15 ARO chief-storekeepers were black;

(f) 2 of ARO's 44 storekeepers were black; while,

(g) all 45 of ARO's machinists were white;

(h) all 174 of ARO's outside-machinists were white; and,

(i) excepting the electrician-trainee positions, 217 of 218 of ARO's electrical-group employees were white.

10. (a) For more than a decade after his employment with ARO, Mr. Kennerly followed a consistent pattern of bidding for promotions into vacant jobs and for vacancies as a trainee.

(b) As to some of such bids, the plaintiff was determined preliminarily to be not qualified (NQ), and such a bid was considered no further.

(c) As to others of such bids, Mr. Kennerly was determined preliminarily to be apparently qualified (AQ), but he was never the successful bidder on any job (after his aforementioned initial promotion).

(d) ARO posted a notice of vacancies in the position of storekeeper as job no. 4443 on July 24, 1973. Mr. Kennerly bid thereon on the same date and was determined preliminarily to be AQ. He was notified on

August 30, 1973 that a " * * * better qualified employee was selected * * * " for one of those positions. (ARO made no showing that seniority, as well as the necessary qualifications to perform the work of storekeeper, was taken into account in such selection.) The successful bidder was Mr. L. L. McKinney, a white person. As between Messrs. McKinney and Kennerly, Mr. Kennerly was the senior employee and entitled to preference.

(e) ARO posted a notice of a vacancy in the position of truck driver as job no. 4353. Mr. Kennerly bid thereon on April 5, 1973. He was notified on May 9, 1973 that he did " * * * not have the necessary qualifying experience." Mr. J. D. Sheet, a white person, was selected for that position. (ARO made no showing that Mr. Kennerly could not have been qualified for that job within three months or other reasonable period. " * * * [T]he ability to drive a truck * * * is one many persons * * * can fairly readily acquire. * * * " *Hazelwood School District v. United States* (1977), 433 U.S. 299, 308, 97 S.Ct. 2736, 2742, 53 L.Ed.2d 768, 777–778 n.13.

(f) ARO posted a notice of a vacancy in the position of truck driver (under 3 tons) as job no. 4409. Mr. Kennerly bid thereon on August 17, 1973. He was notified on August 22, 1973 that a " * * * better qualified employee was selected * * * " for this position. Mr. R. E. Bandy, a white person, was thus selected. (ARO made no showing that Mr. Kennerly could not have been qualified for that job within three months or other reasonable period.)

(g) ARO posted a notice of a vacancy in the position of storekeeper as job no. 4653. Mr. Kennerly bid therefor. Mr. W. D. Frassrand, a white person who was junior to Mr. Kennerly as an ARO employee, was selected therefor on November 19, 1974. ARO had no record of Mr. Kennerly's bid therefor.

11. The plaintiff filed a charge of racial discrimination against ARO with the Equal Employment Opportunities Commission (EEOC) in April, 1972. After a silence of some five months, EEOC advised Mr. Kennerly that his charge had been referred to the district office of EEOC in Birmingham, Alabama. The plaintiff was contacted by an EEOC investigator nearly two years afterward. On January 20, 1976 the EEOC concluded that there was no reasonable cause to believe that ARO had discriminated against the plaintiff. He received on the day following a letter from EEOC notifying him of his right to sue ARO.

12. This action was commenced on April 22, 1976.

13. (a) ARO engaged initially in a usual pattern of unlawful employment discrimination against Mr. Kennerly and other of its black janitor-cleaners and laborers in matters of promotions and training.

(b) A part of ARO's employment decisions involving Mr. Kennerly were made after July 2, 1965.

(c) ARO engaged in employment practices which were facially neutral in their treatment of its black and white wage-earners, respectively, but in point-of-fact fell more harshly on its black wage-earners than its white wage-earners.

14. The rejection of promotions and training of Mr. Kennerly by ARO did not result from either an absolute or relative lack of qualifications of the plaintiff for such promotions and training or from the absence of a vacancy in the jobs or training positions he sought.

The Court arrived at the following

## CONCLUSIONS OF LAW.

A. This Court has jurisdiction of the parties and of the subject matter hereof. 28 U.S.C. § 1343(4).

■ B. The defendant is an employer within the meaning of the provisions of 42 U.S.C. § 2000e(b).

■ C. (a) The plaintiff's civil action herein against ARO, as the respondent in the aforementioned EEOC charge, is timely. 42 U.S.C. § 2000e–5(f)(1)(A).

■ (b) This action is not barred by the provisions of T.C.A. § 28–304; such state

statute of limitations is not applicable hereto. *Draper v. United States Pipe & Foundry Co.,* C.A.6th (1976), 527 F.2d 515, 522[9, 10].

■ (c) It was not a prerequisite to the maintenance of this action that Mr. Kennerly raise first the question of ARO's racial discrimination against him under the grievance-and-arbitration procedure contained in the pertinent collective bargaining agreement. *Alexander v. Gardner-Denver Company* (1974), 415 U.S. 36, 48–51, 94 S.Ct. 1011, 1019–1021, 39 L.Ed.2d 147, 158–159[7], [8, 9].

■ (d) This action is not barred by the finding of the EEOC that there was no reasonable cause to believe that Mr. Kennerly had been unlawfully discriminated against by ARO; rather such matters are entitled to a *de novo* consideration in this judicial forum. *Ibid.,* 415 U.S. at 44–45, 94 S.Ct. at 1017–1018, 39 L.Ed.2d at 156[3, 4]; *McDonnell Douglas Corporation v. Green, infra,* 411 U.S. at 798–799, 93 S.Ct. at 1822, 36 L.Ed.2d at 676[1, 2].

■ (e) Continuing unlawful racial discrimination in promotional opportunities, as is alleged herein, " * * * invariably arises during a lengthy period of time. * * * " *Rich v. Martin Marietta Corporation,* C.A.10th (1975), 522 F.2d 333, 348[18]. Thus, specific instances of such continuing discrimination by ARO which occurred subsequent to the plaintiff's filing the aforementioned charge with the EEOC may be considered herein, since they are within " * * * the scope of the EEOC investigation reasonably expected to grow out of his charge of discrimination. * * * " *Tipler v. E. I. duPont deNemours and Co.,* C.A.6th (1971), 443 F.2d 125, 131[8, 9].

■ D. It is an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation or privileges of employment because of such individual's race, 42 U.S.C. § 2000e–2(a)(1), or to limit, segregate, or classify its employees in any way which deprives or tends to deprive any individual of employment opportunities or otherwise affect his status as an employee because of such individual's race, 42 U.S.C. § 2000e–2(a)(2).

■ E. (a) An employer shall be prevented from engaging in any unlawful employment practice as set forth in 42 U.S.C. § 2000e–2(a)(1), (2), 42 U.S.C. § 2000e–5(a); and it is a deprivation of a person's civil rights for an employer to deprive that person of any right or privilege secured by 42 U.S.C. 2000e–2(a)(1), (2).

■ (b) The law " * * * tolerates no racial discrimination, subtle or otherwise. * * *" *McDonnell-Douglas Corporation v. Green, infra,* 411 U.S. at 801, 93 S.Ct. at 1824, 36 L.Ed.2d at 677[7].

■ (c) " * * * Title VII [of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, et seq.] provides for equal opportunity to compete for *any* job. * * * " [Emphasis in original.] *Teamsters v. United States, infra,* 431 U.S. at 338, 97 S.Ct. at 1855, 52 L.Ed.2d at 417, n.18[5b].

■ F. (a) The plaintiff bore the initial burden of making out a prima facie case of discrimination on the part of the defendant. *Teamsters v. United States* (1977), 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396, 416[2]. His showing that he was a qualified applicant, who is a member of a racial minority group, who had sought unsuccessfully a job for which there was a vacancy and for which the defendant continued thereafter to seek applicants with similar qualifications was sufficient to meet that burden. *McDonnell-Douglas Corporation v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 1824[5], 36 L.Ed.2d 668. This latter requirement was satisfied also by a showing that the vacancy was filled by someone possessing the qualifications of Mr. Kennerly, or by someone less qualified. *Equal Employment Op. Com'n v. Detroit Edison Co.,* C.A.6th (1975), 515 F.2d 301, 316[28], vacated and remanded on other grounds (1977), 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267.

■ (b) Confronted with such proof, the burden of going forward with the proof

then shifted to the defendant to rebut the resulting inference of discrimination by offering some legitimate nondiscriminatory reason for the plaintiff's rejection. *McDonnell-Douglas Corporation v. Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1824[6]. " * * * '[A]ffirmations of good faith in making individual selections [were] insufficient to dispel a prima facie case of systematic exclusion.' * * * " *Teamsters v. United States, supra,* 431 U.S. at 343, 97 S.Ct. at 1858, 52 L.Ed.2d at 420, n.24[9b].

■ G. (a) Statistical proof is competent to establish a prima facie case of employment discrimination. *Ibid.,* 431 U.S. at 339, 97 S.Ct. at 1856, 52 L.Ed.2d at 418[6].

■ (b) The gross statistical disparities shown by the plaintiff herein, alone, constitute prima facie proof of ARO's pattern and practice of discrimination against blacks in its janitor-cleaner and laborer classifications. *Hazelwood School District v. United States, supra,* 433 U.S. at 307, 97 S.Ct. at 2741, 53 L.Ed.2d at 777. Such evidence " * * * cast a heavy burden upon the defendant to show that its employment practices were justified despite their discriminatory impact. * * * " *E. E. O. C. v. N. Y. Times Broadcasting Service, Inc.,* C.A.6th (1976), 542 F.2d 356, 361[5, 6].

■ (c) ARO had the opportunity to show, and did not, " * * * that the claimed discriminatory pattern [was] a product of pre-Act hiring rather than unlawful post-Act discrimination. * * * " *Teamsters v. United States, supra,* 431 U.S. at 360, 97 S.Ct. at 1867, 52 L.Ed.2d at 430.

■ H. (a) Both the bargaining agreement involved and (after its inception) the aforementioned order of the Secretary of Labor required ARO to consider *both* qualifications *and* seniority in the aforementioned selections, and only " * * * if qualifications to perform the work of the job classification [were] considered equal, [was] the senior employee [to be] given preference. * * * "

■ (b) " * * * [A] prima facie case Title VII violation may be established by policies or practices that are neutral on their face and in intent but that nonetheless discriminate in effect against a particular group. * * *

■ " * * * One kind of practice 'fair in form, but discriminatory in operation' is that which perpetuates the effects of prior discrimination. * * * 'Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to "freeze" the status quo of prior discriminatory employment practices.' * * * " *Ibid.,* 431 U.S. at 349, 97 S.Ct. at 1861, 52 L.Ed.2d at 423[15], 424[16].

■ I. (a) Employment practices which are facially neutral in their treatment of different groups but, in fact, fall more harshly upon one group than upon another, and cannot be justified by business necessity, constitute disparate impact of such practices. *Ibid.,* 431 U.S. at 334, 97 S.Ct. at 1854, 52 L.Ed.2d at 415, n.15[1b].

■ (b) In order to establish such a justifiable business necessity, ARO had to prove that the business purpose was sufficiently compelling to override any discriminatory impact; that the practice effectively carried out the business purpose it was alleged to have served; and that there were not available any alternative policies or practices which would better accomplish such business purposes equally well but with a lesser discriminatory impact. *Palmer v. General Mills, Inc.,* C.A. 6th (1975), 513 F.2d 1040, 1044[7]. ARO's proof was deficient in this regard.

■ (c) Proof of discriminatory motive on the part of ARO was not required to be proved under the plaintiff's theory of disparate impact. *Teamsters v. United States, supra,* 431 U.S. at 334, 97 S.Ct. at 1854, 52 L.Ed.2d at 415, n.15[1b]. " * * * A business procedure that operates in a discriminatory manner violates Title VII regardless of a defendant's good intent or motivation. * * * " *Palmer v. General Mills, Inc., supra,* 513 F.2d at 1043[4].

■ (d) Once it was shown that ARO's promotional practices, although facially neutral, were discriminatory in their effect, ARO failed to meet its burden of showing that such practices had a manifest relation to the employment in question. *Dothard v. Rawlinson* (1977), 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786, 797[5].

■ J. (a) Mr. Kennerly carried his initial burden of offering evidence adequate to create an inference that an employment decision by ARO was based on a discriminatory criterion illegal under Title VII. *Teamsters v. United States, supra,* 431 U.S. at 357, 97 S.Ct. at 1866, 52 L.Ed.2d at 429[22a].

■ (b) Thus, there was evidence to permit the Court to infer reasonably that ARO's promotional decisions pertaining to Mr. Kennerly were made in pursuit of a discriminatory policy, and ARO was required " * * * to come forward with evidence dispelling that inference. * * * " *Ibid.,* 431 U.S. at 359, 97 S.Ct. at 1866, 52 L.Ed.2d at 430[23]. The burden was then on ARO " * * * to demonstrate that * * * [Mr. Kennerly] was denied an employment opportunity for lawful reasons. * * * " *Ibid.,* 431 U.S. at 362, 97 S.Ct. at 1868, 52 L.Ed.2d at 431–432[27].

■ K. ARO, having failed to rebut the inference that arose from Mr. Kennerly's prima facie case, this Court properly concludes that a violation of Title VII has occurred, and it is the duty of this Court to determine the appropriate remedy. *Ibid.,* 431 U.S. at 361, 97 S.Ct. at 1867, 52 L.Ed.2d 431[26].

■ L. In order for ARO's unlawful employment practices to have been "intentional" within the meaning of 42 U.S.C. § 2000e–5(g), it was only necessary for Mr. Kennerly to have shown that such employer's conduct was not accidental, inadvertent, or heedless, or that it did not arise from a mistake; he was not required to prove any sort of discriminatory intent.

*Waters v. Wisconsin Steel Works of Int. Harvester Co.,* C.A.7th (1974), 502 F.2d 1309, 1321[13]; *Williams v. General Foods Corp.,* C.A.7th (1974), 492 F.2d 399, 406–407[11]; *Brito v. Zia Company,* C.A.10th (1973), 478 F.2d 1200, 1206[11]; *Schaeffer v. San Diego Yellow Cabs, Inc.,* C.A.9th (1972), 462 F.2d 1002, 1006[2]; *United States v. Jacksonville Terminal Company,* C.A.5th (1971), 451 F.2d 418, 443[11], certiorari denied (1972), 406 U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815.

■ M. (a) The final responsibility for the enforcement of Title VII of the Civil Rights Act of 1964 is vested in the federal courts. *Alexander v. Gardner-Denver Company, supra,* 415 U.S. at 44, 94 S.Ct. at 1017, 39 L.Ed.2d at 156[3, 4]. This Court has the duty, in light of its finding herein that ARO engaged intentionally in unlawful employment discrimination, to render a decree which will eliminate so far as possible the discriminatory effects of the past as well as bar like discrimination in the future. *Albemarle Paper Co. v. Moody* (1975), 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280[10–14]. Any such decree must be aimed at making Mr. Kennerly whole for all injuries he suffered on account of ARO's unlawful employment discrimination. *Idem.* His compensation must be equal to his injury, so that the plaintiff will be placed, as nearly as possible, in the situation he would have occupied if this wrong had not been committed. *Idem.*

■ (b) The Court must " * * * follow principles of equity in fashioning a judgment in a case of this nature. * * * " *United States v. Roadway Express, Inc.,* C.A.6th (1972), 457 F.2d 854, 856[1].

■ N. This Court, having found that ARO has intentionally engaged in unlawful employment practices against Mr. Kennerly, he is entitled to " * * * injunctive relief prohibiting this conduct. * * * " *E. E. O. C. v. N. Y. Times Broadcasting Service, Inc. supra,* 542 F.2d at 361[8]; ac-

cord: *Equal Employment Op. Com'n v. Detroit Edison Co., supra,* 515 F.2d at 314[20]; *Head v. Timken Roller Bearing Company,* C.A.6th (1973), 486 F.2d 870, 878[10].

▮▮▮ O. (a) An award of back pay is not an automatic or mandatory remedy but is within the discretion of the Court. *Albemarle Paper Co. v. Moody, supra,* 422 U.S. at 415, 95 S.Ct. at 2370, 45 L.Ed.2d at 295[4]. Where, as here, there is finding of intentional unlawful employment discrimination, an award of backpay is mandated " * * * unless exceptional circumstances are present. * * * " *Head v. Timken Roller Bearing Company, supra,* 486 F.2d at 876[5]. No such circumstances are present herein.

▮▮▮ (b) " * * * [T]he object of a back-pay award is to effect restitution. * * * " *Equal Employment Op. Com'n v. Detroit Edison Co., supra,* 515 F.2d at 315[22, 23]. Thus, the measure of any such award is the difference between (1) the highest earnings for the jobs to which Mr. Kennerly would have been entitled to promotion and (2) his actual earnings during the interval. *Idem.* Furthermore, ARO's back-pay liability to Mr. Kennerly is limited to a date not more than 2 years prior to April, 1972. 42 U.S.C. § 2000e–5(g); *Albemarle Paper Co. v. Moody, supra,* 422 U.S. at 410, 95 S.Ct. at 2368, 45 L.Ed.2d at 292[1b], n.3. The fact that the computation of such an award may be difficult does not justify its denial; for Mr. Kennerly only needed to establish his eligibility therefor " * * * within the realm of reasonable probability. * * * " *Meadows v. Ford Motor Company,* C.A.6th (1975), 510 F.2d 939, 948[1, 2], certiorari denied *sub nom. Local 862, International Union, Etc. v. Ford Motor Company* (1976), 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823.

▮▮▮ P. In addition, the Congress has authorized this Court " * * * to order such affirmative action as may be appropriate to remedy the effects of unlawful employment practices. * * * " *Alexander v. Gardner-Denver Company, supra,* 415 U.S. at 44, 94 S.Ct. at 1017, 1018, 39 L.Ed.2d at 156[3, 4], citing 42 U.S.C. § 2000e–5(f), (g). Mr. Kennerly is entitled to be placed in such a position as he would have been were it not for the unlawful discriminatory conduct of ARO. *Franks v. Bowman Transportation Co.* (1976), 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444, 461[9–11a]. The ordering of a promotion of the plaintiff would appear to be proper affirmative relief under Title VII, although such remedy seems to be very seldomly used. See 15 Am.Jur.2d 988–989, Civil Rights § 425.

▮▮▮ Q. Mr. Kennerly is also entitled to an award of attorney's fees herein, there being no unusual circumstances present which would render such an award unjust. *Albemarle Paper Co. v. Moody, supra,* 422 U.S. at 415, 95 S.Ct. at 2370, 45 L.Ed.2d at 295[3]; *Satty v. Nashville Gas Company,* C.A.6th (1975), 522 F.2d 850, 855[6], certiorari granted (1977), 429 U.S. 1071, 97 S.Ct. 806, 50 L.Ed.2d 788; *Meadows v. Ford Motor Company, supra,* 510 F.2d at 949–950. 42 U.S.C. § 2000e–5(k) " * * * require[s] [this Court] to award a fee that would approximate the customary fee in the community for similar work. * * * " *Singer v. Mahoning County Board of Mental Retard.,* C.A.6th (1975), 519 F.2d 748, 749[2].

▮▮▮ It recently has been suggested that where, as here, individual relief for the victim of a discriminatory employment practice is sought, the district court may conduct additional proceedings after the liability phase of the trial to determine the scope of the necessary relief. *Teamsters v. United States, supra,* 431 U.S. at 361, 97 S.Ct. at 1867, 52 L.Ed.2d at 431[27]. A determination of the amount of a back pay award for Mr. Kennerly may be difficult, perhaps necessitating reference to a special master. See: *Meadows v. Ford Motor Company, supra,* 510 F.2d at 948[1, 2]; *Equal Employment Op. Com'n v. Detroit*

*Edison Co., supra,* 515 F.2d at 315[21]. Additional matters must be presented before the Court can adequately discharge its obligation to attempt to make the plaintiff whole for the unlawful discrimination which has been practiced by the defendant insofar as the plaintiff seeks affirmative relief herein.* Evidence as to a reasonable attorney's fee for Mr. Kennerly must also be taken. Thus, additional proceedings are necessary before the Court can fashion an appropriate decree. *Teamsters v. United States, supra.*

### INTERLOCUTORY DECISION

It is the decision of the Court that judgment enter for the plaintiff and against the defendant. Rule 58(1), Federal Rules of Civil Procedure. The defendant ARO, its directors, officers, employees, agents, and attorneys hereby are ENJOINED permanently from violating directly or indirectly the plaintiff's rights as guaranteed by the provisions of Title VII of the Civil Rights Act of 1964, *supra.*

The clerk will assign this action for further proceedings, limited to a determination of (1) the amount of an award of back pay for the plaintiff, (2) the nature and extent of any affirmative relief which may be appropriate, and (3) the amount of a reasonable attorney's fee for counsel's representation of the plaintiff herein.

---

* Any impact on such relief of the plaintiff's accepting a full-time position with a labor union must also be considered.